ARTHUR J. ROCQUE, JR., COMMISSIONER OF ENVIRONMENTAL PROTECTION *v.* DESIGN LAND DEVELOPERS OF MILFORD, INC. (AC 23701)

Lavery, C. J., and Dranginis and Berdon, Js.

Argued September 18, 2003—officially released April, 6, 2004

*Elizabeth C. Barton,* with whom was *Sharon M. Seligman,* for the appellant (defendant).

*Matthew Levine,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Mark P. Kindall* and *Kimberly P. Massicotte,* assistant attorneys general, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The defendant, Design Land Developers of Milford, Inc., appeals from the judgment of the trial court granting the motion for contempt filed by the plaintiff, Arthur J. Rocque, Jr., the commissioner of environmental protection, for the defendant's alleged violation of a stipulated judgment. The dispositive

issues in this appeal are whether (1) the court lacked subject matter jurisdiction to consider the commissioner's motion for contempt because the defendant was in compliance with the terms of the stipulated judgment prior to, and at the time of, the contempt hearing and (2) the court improperly found that the defendant had violated the terms of the stipulated judgment. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant operates a solid waste landfill in Milford. In June, 2001, the commissioner brought an action against the defendant, alleging various violations of the permit to operate the landfill. In his complaint, the commissioner alleged that the defendant had (1) exceeded the established height requirements by overfilling portions of the landfill, (2) failed to maintain proper grades and slopes of the landfill, (3) failed to extend public water service to homes located on Oronoque Road within six months of the landfill reopening and (4) failed to apply timely cover to portions of the landfill that had reached the final grade.

Prior to trial, the parties reached a settlement agreement, which became the stipulated judgment that was approved by the court on November 5, 2001. The judgment required the defendant (1) to operate the landfill according to a revised operation and management plan,[1] (2) to cease depositing solid waste above the established grades, (3) to cease disposing solid waste after May 15, 2003, (4) to apply cover to and close the

---

[1] The plan provided a detailed description of how the defendant's landfill should be operated. It was based on the department of environmental protection's solid waste regulations, but was specifically tailored to the needs of the defendant's landfill in terms of waste type, size, most efficient method of operation and equipment needs. The defendant's engineering firm prepared the plan, which the department of environmental protection then reviewed and approved.

landfill according to the plan, and (5) to pay the cost to connect the homes on Oronoque Road to public water service. In addition, the defendant was required to pay a civil penalty of $100,000.

In July, 2002, the department of environmental protection (department) inspected the landfill and found numerous violations of the judgment. The department found that the defendant had not observed the plan requirements when it (1) failed to utilize the cell method of landfill operation, (2) failed to comply with the requirement of weekly coverage, (3) dumped waste beyond the permitted boundary of the landfill, (4) failed to shape the landfill to permit adequate storm water drainage, (5) failed to control the dust at the landfill and (6) failed to have a proper sign. The commissioner subsequently filed a motion for contempt against the defendant for violating the judgment. A hearing on the motion for contempt was scheduled for October 8, 2002. In its objection to the motion for contempt filed on October 4, 2002, the defendant denied that it was in contempt, claiming that it would establish at the hearing that it was in full compliance with the judgment. The court, in a written memorandum of decision on November 12, 2002, granted the commissioner's motion for contempt, but refused to grant the commissioner's request for a conditional order to close the landfill as a sanction if the defendant violated the judgment again. This appeal followed.

I

The defendant first claims that the court lacked jurisdiction to consider the commissioner's motion for contempt because it was in compliance with the terms of the judgment prior to and at the time of the hearing. Specifically, the defendant claims that the court improperly invoked its contempt powers and that its compli-

ance at the time of the hearing on the motion rendered the issue moot. We disagree.

"Our standard of review is very narrow, and we will afford great deference to the trial court's rulings. . . . We will not reverse the judgment of the trial court unless it can be shown that the trial court misapplied the law or could not reasonably have reached its conclusions as it did." (Citation omitted.) *Lord* v. *Lord*, 44 Conn. App. 370, 376, 689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998).

At the outset, we note that there is no dispute between the parties that the defendant was in full compliance with the judgment at the time of the hearing on the motion for contempt. At the hearing, the defendant argued that the court had no jurisdiction to consider the motion because the defendant, at the time, was in compliance. In its memorandum of decision, the court "emphatically" disagreed, stating that "[t]he court has continuing jurisdiction to enforce its orders and judgments. When a defendant has violated a court judgment or order, its subsequently coming into compliance before the hearing does not deprive the court of jurisdiction of the matter. Otherwise a defendant could violate a court order or judgment and then comply with it without the court having power to reach him."

The court properly stated the rule of law in Connecticut. "[T]he trial court's continuing jurisdiction is not separate from, but, rather, *derives* from, its equitable authority to vindicate judgments. Moreover, we hold that such equitable authority does not derive from the trial court's contempt power, but, rather, from its inherent powers. See *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, [191 Conn. 555, 563, 468 A.2d 1230 (1983)] (recognizing 'trial court's power to fashion a remedy appropriate to the vindication of a prior consent

judgment'); *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 737, 444 A.2d 196 (1982) (recognizing 'the inherent power of the court to coerce compliance with its orders'). Although the trial court found the noncompliant party to be in contempt in both *Connecticut Pharmaceutical Assn., Inc.*, and *Papa*, nothing in those cases suggests that the court's authority 'to fashion a remedy appropriate to the vindication of a prior consent judgment' *derived* from the finding of contempt. *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, supra, 563. Rather, the language in *Papa* suggests the converse: that the contempt power arises from the court's inherent power to vindicate prior judgments. See *Papa* v. *New Haven Federation of Teachers*, supra, 737 ('[t]he penalties which may be imposed [in a contempt proceeding] . . . arise from the inherent power of the court to coerce compliance with its orders')." (Emphasis in original.) *AvalonBay Communities, Inc.* v. *Planning & Zoning Commission*, 260 Conn. 232, 241, 796 A.2d 1164 (2002).

"The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril." *United States* v. *United Mine Workers*, 330 U.S. 258, 303, 67 S. Ct. 677, 91 L. Ed. 884 (1947). "[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." Id., 293; see also *W. R. Grace & Co.* v. *Local Union 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983); *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 276–77, 471 A.2d 638 (1984).

The defendant argues in its brief that civil contempt is "designed to coerce the contemnor to achieve compli-

ance, thus *requiring* that the contemnor be out of compliance, and to compensate the opposing legal party for losses sustained because of such noncompliance." (Emphasis added.) The defendant further argues that if there is no opportunity for the court to coerce the defendant to rectify existing noncompliance because, as here, there is compliance, any sanction imposed ceases to be remedial and coercive, but rather becomes wholly punitive, i.e., criminal, in nature. According to the defendant, the court's purely punitive finding of contempt is contrary to law. We disagree.

Our Supreme Court addressed that issue in *In re Jeffrey C.*, 261 Conn. 189, 197–98, 802 A.2d 772 (2002). In that case, the respondent father agreed that he had failed to adhere to two of the court-ordered steps to regain custody of his minor child, namely, to refrain from engaging in criminal activities and from abusing substances. He was found to be in civil contempt and ordered to pay attorney's fees to the commissioner of children and families. He argued on appeal that the trial court effectively had held him in criminal contempt because he had not been given the opportunity to purge himself of the contempt by complying with those orders that he was found to have violated.

Our Supreme Court rejected that argument, stating: "[A]lthough it is true that, in civil contempt proceedings, the contemnor must be afforded the opportunity to purge himself of the contempt, this is only a consideration when punishment, such as imprisonment or a noncompensatory fine, has been imposed in accordance with the finding of contempt. . . . In the present case, the trial court did not impose a noncompensatory fine or other punishment. Rather, the trial court ordered that the respondent father pay attorney's fees pursuant to [General Statutes] § 52-256b to compensate the commissioner [of children and families] for expenses incurred in enforcing compliance with the orders of the

trial court. . . . Thus, the fact that the respondent father was not offered the opportunity to purge himself of his contemptuous behavior does not, under the circumstances of this case, in any way undermine the trial court's finding of contempt." (Citation omitted.) Id., 198.

That reasoning applies here as well. The commissioner did not seek punitive relief, but rather a finding of contempt and a conditional order to close the landfill if there were further violations of the stipulated judgment. The remedy sought was coercive. In fact, the court made a finding of civil contempt without imposing any sanctions.

The defendant further contends that because it was in compliance at the time of the hearing, the issue was moot. The defendant's claim is wholly without merit. A finding of contempt with regard to a judgment that contemplates further action by the parties may have collateral consequences. See *Sgarellino* v. *Hightower*, 13 Conn. App. 591, 592, 538 A.2d 1065 (1988) (defendant appealed from contempt order issued against him for failure to make child support payments). In *Sgarellino*, we stated: "The trial court's contempt order may impact on the defendant's future status in this action. For example, a future citation for contempt, given the first finding of contempt which is the subject of this case, would make the defendant appear more recalcitrant than he might be, in fact. Such an impression is likely to affect a trial court's determination of the penalty attendant on any future finding of contempt in this case."[2] Id., 594–95.

In the present case, the parties entered into a judgment that required future action on a defined schedule.

---

[2] The plaintiff in *Sgarellino* claimed that the appeal was moot because the defendant had purged himself of the contempt by paying the past due child support. *Sgarellino* v. *Hightower*, supra, 13 Conn. App. 593–94. We disagreed. Id., 595.

As such, there existed an actual and ongoing controversy between the parties. The parties' interests were adverse, and the court was empowered to adjudicate the controversy until there was compliance with the judgment. In its brief, the defendant asserts that the fourth prong[3] of the justiciability test to determine mootness was not met because the court could not grant practical relief. We disagree. The court had the power to grant practical relief, even though, under the facts of this case, it chose not to. The court could have ordered the immediate closure of the landfill, accelerated or decelerated the timing of closure, modified closure conditions or awarded attorney's fees. The court elected to find the defendant in contempt to coerce strict compliance in the future with the terms of the judgment.

We conclude that the law is well settled that the court had the jurisdiction and authority to consider the commissioner's motion for contempt to enforce the judgment.

## II

The defendant next claims that the court improperly found that it had violated the terms of the judgment. Specifically, the defendant claims that the commis-

---

[3] "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . Indeed, we are required to address this question of justiciability, even in the unusual situation where all of the parties agree that the matter is not moot. . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must [meet the four part test for justiciability]. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citations omitted; internal quotation marks omitted.) *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 766–67, 817 A.2d 644 (2003).

sioner failed to meet his burden of proof or to present sufficient facts to support a finding of civil contempt. We do not agree.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Richards* v. *Richards*, 78 Conn. App. 734, 741–42, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003). Moreover, "[t]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Citation omitted.) *Lord* v. *Lord*, supra, 44 Conn. App. 376.

At the hearing, John England and Neal Williams,[4] inspectors for the department, testified about the conditions of the landfill on July 17, 2002, by comparing them with the requirements of the plan. In finding that the defendant had violated the judgment, the court found the observations and conclusions of England and Williams to be credible and reliable.

Our review of the record sufficiently supports the court's conclusion that the defendant violated the judgment in the following manner: (1) it failed to utilize the cell method of landfill operation, (2) it failed to comply with the requirement of weekly coverage, (3) it dumped waste beyond the permitted boundary of the landfill, (4) it failed to shape the landfill to permit adequate

---

[4] England and Williams had a total of thirty-one years experience with the department as environmental analysts.

storm water drainage, (5) it failed to control the dust at the landfill and (6) it failed to have a proper sign on the landfill.

Additionally, the court found that the defendant had acted wilfully in failing to comply with the judgment. "The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. . . . The contemnor must establish that he cannot comply, or was unable to do so." (Citation omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 532, 710 A.2d 757 (1998). In this case, the defendant had the ability to comply with the stipulation, but decided to ignore its provisions until it was found to be in violation. Moreover, it knew about the stipulation's remedial provisions for noncompliance and modification,[5] and chose not to use them. On the basis of our review of the record and transcripts, we conclude that the court did not abuse its discretion in finding that the defendant was in contempt of the judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Paragraph four of the stipulation states in relevant part: "In the event that the Defendant determines that it . . . did not or may not comply on time, with any requirement of this Stipulation for Judgment, the Defendant shall immediately notify the Commissioner and shall take any reasonable steps to ensure that any noncompliance or delay is avoided or, if unavoidable, is minimized to the greatest extent possible. . . ."

Paragraph thirteen states: "The provisions of this Stipulation for Judgment shall be subject to modification with the consent of the parties and the Court, except that the Commissioner and [the defendant] may consent to revisions to [the department] approved plans without further action by the Court."