CAROL B. DIONNE *v.* JASON J. DIONNE
(AC 29274)

Flynn, C. J., and Alvord and West, Js.

Argued April 23—officially released July 7, 2009

*Tad J. Bistor*, for the appellant (defendant).

*Opinion*

ALVORD, J. The determinative issue in this appeal is whether a trial court properly may continue a hearing on a motion for contempt when the alleged contemnor's attorney represents to the court that the court-ordered child support payment is "in the mail." We hold that the court is not obligated to accept the attorney's representation and may continue the hearing for a determination of compliance with the child support orders. Accordingly, we affirm the judgment of the trial court.

The plaintiff, Carol B. Dionne,[1] and the defendant, Jason J. Dionne, were married on September 25, 1998,

---

[1] The plaintiff did not file a brief in this court or appear at oral argument, and she failed to comply with our order pursuant to Practice Book § 67-3, requiring her to file a brief by January 28, 2009. We therefore considered

and have two children, born in 1997 and 2002. Following an irretrievable breakdown of the marriage, the court rendered judgment of dissolution on March 1, 2006. The court incorporated by reference an agreement of the parties that the defendant pay the plaintiff $138 each week as child support and 20 percent of child care costs. On May 9, 2006, the plaintiff filed a motion for contempt, alleging that the defendant had not paid child support or child care expenses, and that he was in arrears in the amount of $552 in child support and $174 in child care expenses. On numerous dates between June 13, 2006, and July 17, 2007, the defendant appeared in court for review of his compliance with the court orders.[2] On July 17, 2007, the court found that the defendant owed the plaintiff an arrearage of $90 and set a compliance date of August 14, 2007.

On August 14, 2007, the defendant's attorney and the pro se plaintiff appeared before the court, *Pinkus, J.*, and represented that the defendant had made all of the payments due on or before August 3, 2007. The defendant's attorney also represented that the defendant had mailed a money order to the plaintiff on August 13, 2007, for his child support payment due on August 10, 2007. The defendant's attorney and the plaintiff discussed, on the record, a photocopy of the postal money order and a certified mail receipt received by facsimile by the defendant's attorney.[3] The plaintiff, however,

this case on the record, the defendant's brief and oral argument only. See *Walsh* v. *Jodoin*, 283 Conn. 187, 191 n.4, 925 A.2d 1086 (2007).

[2] During this period, the defendant was found to be in arrears on several occasions, including arrearages of approximately $1312 on July 17, 2006; $1555 on September 18, 2006; $118 on December 8, 2006; $671 on January 20, 2007; $1513 on March 26, 2007; and $260 on June 5, 2007.

[3] The defendant's attorney, however, did not ask the court to admit the documents as evidence and did not provide anything other than his representations as support for his argument that the defendant actually had placed the money order in the mail to the plaintiff. The representations of counsel are not evidence. *State* v. *Roman*, 224 Conn. 63, 68, 616 A.2d 266 (1992), cert. denied, 507 U.S. 1039, 113 S. Ct. 1868, 123 L. Ed. 2d 488 (1993).

stated that she had yet to receive the money order, that she received only the payments for the arrearage on August 11, 2007, and that the defendant's noncompliance with the court-ordered child support payments was an ongoing problem. The plaintiff also stated that the defendant had "told [the court] many times that he was going to be in compliance, and every time we come he's not in compliance." The court suggested that the case be continued to either Monday, August 27, 2007, or Monday, September 24, 2007, for compliance because the defendant was scheduled to visit the children on the weekends preceding those dates. The defendant's attorney objected to any continuance, arguing that the court could not continue the matter because the defendant was in full compliance. The court disagreed, finding that the plaintiff had yet to receive the latest payment, and it continued the matter to September 24, 2007.[4]

---

[4] The following exchange occurred between the defendant's attorney, the plaintiff and the court:

"[The Defendant's Counsel]: Your Honor, I would suggest that the case law would state that it's improper at this point for the contempt citation to be continued, and I'm referring to the matter of *Berthiaume* v. *Berthiaume*, [Superior Court, judicial district of New Haven, Docket No. FA-98-0412981-S (August 11, 2000)], which indicates it's improper to continue a contempt citation when the defendant is in full compliance—

"The Court: He wasn't. He didn't pay—

"[The Defendant's Counsel]: He's got zero arrears.

"[The Plaintiff]: I have not received it.

"The Court: *That's right. She hasn't received it yet. So, that's not true.*

"[The Defendant's Counsel]: Well, Your Honor, it's been deposited in the [United States] mail. There is proof that it has been deposited in the [United States] mail, which would bring him into full compliance and . . . to continue the case would be improper under the fifth and fourteenth amendments [to] the federal constitution as well as article first, § 9, of the state constitution because in continuing the citation at this point, my client does not have the key to release.

"The Court: Sure he does. The key to his release is to make the payments when they're due. He has the key.

"[The Defendant's Counsel]: But, Your Honor, he has a zero arrearage at this point.

"The Court: No, he doesn't. The 'check's in the mail.'

On September 24, 2007, both parties appeared before the court, *Prestley, J.* The defendant's attorney again raised the issue of whether the court had jurisdiction to hear the issue of contempt. He argued that the contempt hearing should not have been continued because the defendant "[e]ssentially paid the order in full as of the last court date." Judge Prestley reviewed the August 14, 2007 transcript and determined that Judge Pinkus had found that the representation that a money order had been mailed was not sufficient to conclude that the defendant was current on his child support.[5] The parties stipulated to a new arrearage of $961.20 owed by the defendant, which had accrued between August 14 and September 24, 2007.[6] The court found the defendant in contempt of the child support court order, set a purge amount of $500 and stayed the order until 5 p.m. to allow the defendant to avoid incarceration by

"[The Defendant's Counsel]: Yes, Your Honor, and I would suggest that most people that come into this court before Your Honor have wage garnishment, and a lot of times the person hasn't received it even though it has been deducted from their pay.

"The Court: He doesn't have to come to court. Does he have a wage garnishment?

"[The Plaintiff]: Your Honor . . . it [is] going to take a month to two months to get a wage garnishment involved because the out-of-state log is backed up.

"The Court: I'm going to continue this to September 24 for compliance. If he's current, he doesn't have to be here.

"[The Defendant's Counsel]: Yes, Your Honor, twenty-fourth of September.

"The Court: Twenty-fourth of September. If he's current, he doesn't have to be here. If he's not current, meaning—now he's coming up on that weekend. That's why I scheduled it. He doesn't have to be here. So, that means he doesn't have to mail a check to her. That means he can hand her a check when he picks up the child. So, if he's current, you don't have to be here. If he's not current, you do have to be here, and we'll deal with it. If he's current, then this matter is resolved and you'll have to file another motion at another time. Okay." (Emphasis added.)

[5] The record indicates that the plaintiff did receive the money order for the August 10, 2007 payment prior to September 24, 2007.

[6] The defendant stated that he lost his job on August 20, 2007, and, therefore, discontinued payments to the plaintiff. He also stated that he had found new employment that was to begin on September 25, 2007.

paying the purge amount. The defendant returned to court with only $300 and was ordered incarcerated with an amended purge amount of $200. The defendant paid the $200 later that evening and was released from incarceration. The defendant timely filed this appeal.

The defendant claims that the court improperly continued the hearing on the motion for contempt when he "had fully complied with the court's orders to pay child support." Specifically, the defendant claims that the court (1) "exceeded its authority, and thereby abused its discretion, in continuing the contempt citation and the threat of incarceration thereunder, when the defendant had fully complied with the court's orders to pay child support" and (2) continued the "contempt citation and the threat of incarceration thereunder, when the defendant had fully complied with the court's orders to pay child support [in violation of] his due process rights under the fifth and fourteenth amendments to the United States constitution and article [first, § 9] of the Connecticut constitution because he did not hold the 'key to his release' in that he was prevented from purging himself of a past contempt until he met all future obligations." We disagree.

To begin, we briefly address the defendant's challenge to the court's finding on August 14, 2007, that he was not in compliance with the court's order.[7] The defendant argues that there was sufficient evidence in the record to make a finding that he was in compliance with the court's orders. The defendant was seeking to defend the motion for contempt with the representations of counsel. "This court, as well as our Supreme Court, repeatedly has stated that representations of counsel are not evidence. See, e.g., *State* v. *Sauris*, 227 Conn. 389, 404, 631 A.2d 238 (1993), overruled in part

---

[7] Although the defendant did not brief this claim directly, it is implicit in his arguments and was claimed explicitly at oral argument before this court.

on other grounds by *Label Systems Corp.* v. *Aghamo-hammadi*, 270 Conn. 291, 309, 852 A.2d 703 (2004); *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 154, 496 A.2d 476 (1985); *Baker* v. *Baker*, 95 Conn. App. 826, 832, 898 A.2d 253 (2006); *Irizarry* v. *Irizarry*, 90 Conn. App. 340, 345, 876 A.2d 593 (2005); *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001); *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 26, 783 A.2d 1157 (2001); *Constantine* v. *Schneider*, 49 Conn. App. 378, 397, 715 A.2d 772 (1998); *Martin* v. *Liberty Bank*, 46 Conn. App. 559, 562–63, 699 A.2d 305 (1997)." *Aley* v. *Aley*, 101 Conn. App. 220, 229, 922 A.2d 184 (2007). In addition, the defendant relied on documents, namely, the facsimile copies of a money order and a certified mail receipt, for which counsel never laid a foundation, never supported with testimony and never asked to have admitted as exhibits.

Furthermore, even if we assume that there was evidence *sufficient* for such a finding, that is not the standard by which we review a court's refusal to make such a finding. We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 327, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

In the present case, we are called on to determine whether the court's finding that the defendant was not in compliance with the court's orders was clearly erroneous. The defendant would have us conclude that when there is a prior noncompliance by an obligor with court orders and an obligee asserts that she has not received the payment of child support, a court *must* dismiss a motion for contempt if counsel for an alleged

contemnor presents the court with a photocopy of a money order and a receipt for certified mail addressed to the obligee, and the obligor's counsel makes the representation that the obligor purchased and mailed the money order to the obligee. We cannot so hold. Therefore, the court's refusal to credit, as conclusive, the representations of the defendant's counsel and documents not placed in evidence was not clearly erroneous.[8]

The defendant argues that we should review de novo the court's decision to continue the plaintiff's motion to September 24, 2007, and thereby maintain jurisdiction. It is well settled that a reviewing court "will only find error in the grant or denial of a motion for a continuance if a clear abuse of the trial court's discretion is shown. *Rusch* v. *Cox*, 130 Conn. 26, 32, 31 A.2d 457 (1943); *State* v. *McLaughlin*, 126 Conn. 257, 260, 10 A.2d 758 [1939]; *Allen* v. *Chase*, 81 Conn. 474, 477, 71 A. 367 [1908]. *State* v. *Best*, 171 Conn. 487, 492, 370 A.2d 1035 (1976). Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. See *State* v. *Jeustiniano*, 172 Conn. 275, 285, 374 A.2d 209 (1977); *State* v. *Manning*, 162 Conn. 112, 121, 291 A.2d 750 (1971)." (Internal quotation marks omitted.) *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 538, 429 A.2d 801 (1980).

The defendant also argues that this appeal raises an issue of first impression for the appellate courts of this state, namely, whether a court has jurisdiction over a motion for contempt after a once delinquent obligor

---

[8] We note that the defendant's argument that the court continued the matter to monitor only his future compliance is wholly without merit. At the time of the hearing on August 14, 2007, his August 10, 2007 payment to the plaintiff had not yet been received. Accordingly, we cannot say that he was not in violation of a court order even if the money order was in fact in the mail.

comes into compliance before a hearing. We note, however, that this court addressed a strikingly similar argument in *Rocque* v. *Design Land Developers of Milford, Inc.*, 82 Conn. App. 361, 844 A.2d 882 (2004).[9] In *Rocque*, the defendant had argued that "the court had no jurisdiction to consider the motion [for contempt] because the defendant, at the time [of the hearing], was in compliance. In its memorandum of decision, the [trial] court 'emphatically' disagreed, stating that '[t]he court has continuing jurisdiction to enforce its orders and judgments. When a defendant has violated a court judgment or order, its subsequently coming into compliance before the hearing does not deprive the court of jurisdiction of the matter. Otherwise a defendant could violate a court order or judgment and then comply with it without the court having power to reach him.' " Id., 365.

This court held that the trial court "properly stated the rule of law in Connecticut. [T]he trial court's continuing jurisdiction is not separate from, but, rather, *derives* from, its equitable authority to vindicate judgments. Moreover, we [held] that such equitable authority does not derive from the trial court's contempt power, but, rather, from its inherent powers. See *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, [191 Conn. 555, 563, 468 A.2d 1230 (1983)] (recognizing trial court's power to fashion a remedy appropriate to the vindication of a prior consent judgment); *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 737, 444 A.2d 196 (1982) (recognizing the inherent power of the court to coerce compliance with its orders). Although the trial court found the noncompliant party to be in contempt in both *Connecticut Pharmaceutical Assn.*,

---

[9] As discussed previously in this opinion, the court properly found that the defendant had not satisfactorily shown compliance at the hearing on August 14, 2007. Nevertheless, we find instructive this court's analysis in *Rocque* of the continuing jurisdiction of the court over a *defendant in full compliance* with court orders at the time of the hearing.

*Inc.*, and *Papa*, nothing in those cases suggests that the court's authority to fashion a remedy appropriate to the vindication of a prior consent judgment *derived* from the finding of contempt. *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, supra, 563. Rather, the language in *Papa* suggests the converse: that the contempt power arises from the court's inherent power to vindicate prior judgments. See *Papa* v. *New Haven Federation of Teachers*, supra, 737 ([t]he penalties which may be imposed [in a contempt proceeding] . . . arise from the inherent power of the court to coerce compliance with its orders). . . . *AvalonBay Communities, Inc.* v. *Planning & Zoning Commission*, 260 Conn. 232, 241, 796 A.2d 1164 (2002).

"The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril. *United States* v. *United Mine Workers*, 330 U.S. 258, 303, 67 S. Ct. 677, 91 L. Ed. 884 (1947). [A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. Id., 293; see also *W. R. Grace & Co.* v. *Local Union 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983); *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 276–77, 471 A.2d 638 (1984)." (Emphasis in original; internal quotation marks omitted.) *Rocque* v. *Design Land Developers of Milford, Inc.*, supra, 82 Conn. App. 365–66.

Moreover, like the defendant in the present case, the defendant in *Rocque* argued that "civil contempt is designed to coerce the contemnor to achieve compliance, thus requiring that the contemnor be out of compliance, and to compensate the opposing legal party

for losses sustained because of such noncompliance. . . . The defendant further argue[d] that if there is no opportunity for the court to coerce the defendant to rectify existing noncompliance because . . . there is compliance, any sanction imposed ceases to be remedial and coercive, but rather becomes wholly punitive, i.e., criminal, in nature. According to the defendant, the court's purely punitive finding of contempt [was] contrary to law." (Internal quotation marks omitted.) Id., 366–67.

This court then looked to our Supreme Court's decision in *In re Jeffrey C.*, 261 Conn. 189, 802 A.2d 772 (2002), for guidance. In that case, our Supreme Court rejected that argument, holding: "[A]lthough it is true that, in civil contempt proceedings, the contemnor must be afforded the opportunity to purge himself of the contempt, this is only a consideration when punishment, such as imprisonment or a noncompensatory fine, has been imposed in accordance with the finding of contempt. . . . In [*In re Jeffrey C.*], the trial court did not impose a noncompensatory fine or other punishment. Rather, the trial court ordered that the respondent father pay attorney's fees . . . to compensate the commissioner [of children and families] for expenses incurred in enforcing compliance with the orders of the trial court. . . . Thus, the fact that the respondent father was not offered the opportunity to purge himself of his contemptuous behavior does not, under the circumstances of this case, in any way undermine the trial court's finding of contempt." (Citations omitted.) Id., 198. Accordingly, this court in *Rocque* held that because "the parties entered into a judgment that required future action on a defined schedule . . . there existed an actual and ongoing controversy between the parties. The parties' interests were adverse, and the court was empowered to adjudicate the controversy until there was compliance with the judgment." *Rocque* v. *Design*

*Land Developers of Milford, Inc.,* supra, 82 Conn. App. 368–69.

In the present case, the court never *punished* the defendant with imprisonment or noncompensatory fines in accordance with a finding of contempt. In fact, the defendant was not found in contempt on August 14, 2007.[10] The case simply was continued to another date, September 24, 2007, to ascertain compliance because the court was unable to determine satisfactorily the defendant's compliance with its orders. Aside from the defendant's allegation that the court abused its discretion, he has provided no factual support or legal analysis for that position. Upon our review of the record, including the defendant's numerous failures to pay child support and the court's proper finding that the defendant had not shown compliance, we cannot say that the court abused its discretion by granting a continuance.

On September 24, 2007, when the defendant was found in contempt, he had failed to pay child support for approximately six weeks and owed the plaintiff $961.20. The court found him in wilful contempt[11] of a prior court order. The court, however, stayed the contempt finding until the end of that court day and ordered the defendant incarcerated only if he could not purge the contempt finding by providing a partial payment of $500 to the plaintiff. The court's orders were *coercive* and, therefore, were properly imposed in accordance with the finding of civil contempt.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Nothing in this opinion should be construed to hold that the court could not have found the defendant in contempt when the payment due August 10, 2007, had not been received by the plaintiff as of August 14, 2007.

[11] The defendant has not challenged the factual basis of this finding of contempt.