******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JENNIFER NORBERG-HURLBURT *v.*
RICHARD M. HURLBURT
(AC 37244)

Alvord, Mullins and Pellegrino, Js.

*Submitted on briefs October 9, 2015—officially released January 26, 2016*

(Appeal from Superior Court, judicial district of
Litchfield, Hon. Charles D. Gill, judge trial referee
[dissolution judgment]; Ginocchio, J. [motion for
contempt, motion to terminate alimony].)

*J. Keith Nolan* filed a brief for the appellant
(plaintiff).

*James D. Hirschfield* filed a brief for the appellee
(defendant).

*Opinion*

ALVORD, J. The plaintiff, Jennifer Norberg-Hurlburt, appeals from the postjudgment rulings of the trial court granting the motion for contempt and the motion to terminate alimony filed by the defendant, Richard M. Hurlburt. On appeal, the plaintiff claims that the court improperly (1) found her in contempt for failure to make certain payments without allowing her to testify as to her financial condition and (2) terminated her alimony on the basis of cohabitation without allowing her to testify as to her relationship with her fiancée and her living arrangements. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the plaintiff's claims. The court, *Hon. Charles D. Gill*, judge trial referee, dissolved the parties' seventeen year marriage on October 7, 2009. At the time of the dissolution, the parties had two minor children, aged fifteen and seventeen. The judgment of dissolution incorporated by reference the parties' "divorce settlement agreement" (agreement), which contained provisions regarding alimony, the marital residence, and responsibility for outstanding debt. With respect to alimony, the defendant was obligated to pay the plaintiff $400 per week. The defendant could seek to modify that amount "only upon [the plaintiff's] cohabitation, which shall be defined as a relationship similar to that of husband and wife."

With respect to the marital home, the defendant was to transfer his interest in the parties' jointly owned residence in North Canaan to the plaintiff, and she was thereafter responsible for "the mortgage(s), taxes, insurance, and all other expenses and financial obligations on, related to and resulting from this property . . . ." Paragraph 21 of the agreement further provided in relevant part: "[I]t is hereby expressly agreed that, notwithstanding the labels of any particular paragraph hereof, all of the obligations created by this Agreement are in the nature of support and therefore shall not be dischargeable by either party in the event of bankruptcy."

Sometime in 2013, the plaintiff relocated from Connecticut to New Jersey. On December 2, 2013, she filed for federal bankruptcy protection under chapter 7 of the United States Bankruptcy Code and received a discharge in bankruptcy in March, 2014. On July 7, 2014, the defendant filed a postjudgment motion for contempt, claiming, inter alia, that the plaintiff had failed to pay the mortgage on the former marital residence, had failed to maintain the property and to keep it in repair, and had failed to pay the real estate taxes, all as required by the provisions in their agreement that had been incorporated into their dissolution judgment. Additionally, on July 7, 2014, the defendant filed a postjudgment

motion to terminate his alimony obligation, claiming that the plaintiff was "cohabitating with Russell Brown in a relationship similar to that of husband and wife." The defendant sought the modification pursuant to the terms of the agreement.

The plaintiff filed a memorandum in opposition to the defendant's postjudgment motions on July 16, 2014. In her opposition, she stated that she had "not remarried," but she "concede[d] she [was] in a relationship with Russ Brown." She argued that the defendant's motion to terminate her alimony should be denied because the defendant had "not offered any evidence of a financial impact from [her] relationship with Russ Brown . . . ." With respect to the defendant's motion for contempt, the plaintiff did not contest the allegations that she had failed to make the payments required by the agreement, but she stated that she had "not wilfully failed to make payments on any of her debts" and had been "struggling with her financial obligations as best she could."

A hearing on the defendant's motions and the plaintiff's opposition thereto was held on July 21, 2014. At that time, the defendant, his counsel, and the plaintiff's counsel were in attendance. The plaintiff, however, did not appear. The plaintiff's counsel, after saying that the plaintiff was "unable to be here today," asked the court to read a letter from the plaintiff's employer explaining her absence. The court asked the defendant's counsel for his position on this development, and he responded: "Quite frankly, it's not going to be as easy for me to prove the motion to terminate alimony without [the plaintiff] here. However, the last three times we've been here, she doesn't show up. The motion was marked— came up on the calendar more than a week ago. I marked it right away, early in the week, and sent it to [the plaintiff's counsel]. [The plaintiff] just doesn't come to court. So, I've told [the plaintiff's counsel] that I'm going to ask the court to go forward." The court then reviewed the letter[1] from the plaintiff's employer and stated: "All right. I'm going to deny the continuance request. So, we're going to go forward today . . . ."

The defendant's counsel called the defendant to the witness stand. Beginning with the motion for contempt, the defendant testified that, pursuant to the terms of the agreement, he had conveyed his interest in the marital residence to the plaintiff. He stated that at that point, she was responsible for the mortgage payments, taxes, insurance, and all other expenses related to the property. The defendant testified that the plaintiff failed to make mortgage payments beginning in August, 2013, with nonpayment continuing thereafter, and failed to make payments for the homeowner's insurance. Additionally, according to his testimony, the plaintiff had failed to pay the real estate taxes on the marital residence, and a tax lien foreclosure action was then pend-

ing in Superior Court. The defendant testified that the tax arrearage at that time was approximately $23,000.

The defendant's counsel inquired as to whether the defendant recently had viewed the North Canaan property. The defendant responded in the affirmative, and he described it as being abandoned and in a state of disrepair. Several photographs were admitted into evidence, without objection by the plaintiff's counsel, and the defendant indicated that the lawn had not been mowed, the side entrance door was left open, a plastic sheet covered a window in the back of the house, and a pile of debris was located outside the house. At the conclusion of the defendant's direct testimony, he requested attorney's fees in the amount of $9000 to cover his expenses in pursuing the subject motions. During a very brief cross-examination, the plaintiff's counsel asked whether the subject property had been listed for sale. The defendant acknowledged that it had been and currently was on the market.

At the conclusion of cross-examination, the court made a finding of contempt and ordered the plaintiff to pay the defendant $2500 in attorney's fees. Although there was no evidence from the plaintiff presented to the court, either testimonial or documentary, concerning her financial situation, the plaintiff's counsel made the following statement: "Your Honor, she has not been able to afford to pay these things. She would now be trying to support two homes. She moved to New Jersey to get herself out from under this—the—what she regards as the spine of her husband and the harassment. She got herself a job down there, but she can't maintain two homes. And this is her financial problem, she really deserves to have a chance to get up here and testify about it before she's held in contempt."

The defendant's counsel then proceeded to address the motion for termination of alimony payments on the ground of cohabitation, the request being made under the modification provision contained in the agreement. In questioning the defendant, his counsel asked whether the plaintiff was living with Russell Brown. The defendant responded: "Yes." The defendant's counsel then asked to submit into evidence an article in the Waterbury Republican-American, dated August 5, 2012, which contained a picture of the plaintiff and Brown. The article identified Brown "and his fianc[ée] Jennifer Norberg." The plaintiff's counsel said that he had no objection, and the article was admitted as a full exhibit. On the basis of the defendant's testimony and the exhibit, the defendant requested that his alimony obligation be terminated on the ground of cohabitation. The plaintiff's counsel did not cross-examine the defendant.

Counsel then made their arguments to the court on the defendant's motion for termination of alimony. The defendant's counsel, when asked by the court whether he had any additional evidence on cohabitation,

responded: "If the court believes that they are living together, I mean that's akin to a husband and wife. If the [plaintiff] was here, I would ask her if they're having relations with each other, but she's not here. That certainly would be husband and wife. So, she's avoided court—I have no other evidence, Your Honor." The court ruled as follows: "Well, you bring up the last good point; she's not here to testify. If she did—if she's not testifying, could I draw a negative inference from the fact that she's not here to testify in regard to her living conditions? I could. You did produce evidence that she is engaged, which I thought was compelling. So, based on those findings, I am going to make the finding that the relationship is one of cohabitation in accordance with that agreement and terminate [the defendant's] alimony payments."

When the plaintiff's counsel asked the court to repeat the ruling, the court responded: "She's not here to answer; she hasn't come to court in the last three court dates. [The defendant's counsel] would have had [the right] to question her about this cohabitation. There is evidence that she is engaged. That evidence that [the defendant's counsel] produced was relevant to that issue, and I'm going to draw [an] unfavorable inference from the fact that she's not here, and that unfavorable inference will go to the issue of cohabitation. . . . I'm terminating the alimony payment."

On August 11, 2014, the plaintiff filed a motion for reargument pursuant to Practice Book § 11-11. In that motion, representations were made as to what the plaintiff would have testified to if she had been present at the July 21, 2014 hearing on the defendant's motions. The court summarily dismissed the plaintiff's motion on August 19, 2014. This appeal followed.

I

The plaintiff's first claim is that the court improperly "found the plaintiff in contempt for failure to keep the mortgage and property taxes on her North Canaan property current, to maintain the same and to pay a student loan[2] without allowing her to testify as to her financial condition." Specifically, the plaintiff argues that the court, "by not allowing her to testify as to her financial condition . . . prevented her from showing that she was not at fault in her nonpayment of the debts and obligations in question, thereby precluding her from making a valid defense."[3]

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [alleged contemnor] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing

of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *Grasso* v. *Grasso*, 153 Conn. App. 252, 257, 100 A.3d 996 (2014).[4]

The plaintiff does not challenge the court's finding that she had not complied with the court's orders to make the mortgage payments, to pay the real estate taxes, and to maintain the marital property. Instead, she focuses on her claim that her noncompliance was not wilful. Citing *Tobey* v. *Tobey*, 165 Conn. 742, 746, 345 A.2d 21 (1974), the plaintiff argues that "[t]he inability of [the alleged contemnor] to obey an order of the court, without fault on his [or her] part, is a good defense to a charge of contempt." (Internal quotation marks omitted.) In her appellate brief, she claims that "[t]he court had notice that [the] plaintiff was having financial difficulties," as stated by her counsel at the July 21, 2014 hearing. Further, as support for this claim, she states that "[t]he plaintiff summarized these difficulties in the conversation with her counsel on August 19, 2014, as quoted in paragraph G of counsel's affidavit," which was included in the appendix to her appellate brief.

The only information provided to the court at the time of the July 21, 2014 hearing regarding the plaintiff's "financial difficulties" consisted of the unsworn statements of her counsel. "This court, as well as our Supreme Court, repeatedly has stated that representations of counsel are not evidence. See, e.g., *State* v. *Sauris*, 227 Conn. 389, 404, 631 A.2d 238 (1993), overruled in part on other grounds by *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 309, 852 A.2d 703 (2004); *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 154, 496 A.2d 476 (1985); *Baker* v. *Baker*, 95 Conn. App. 826, 832, 898 A.2d 253 (2006); *Irizarry* v. *Irizarry*, 90 Conn. App. 340, 345, 876 A.2d 593 (2005); *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001); *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 26, 783 A.2d 1157 (2001); *Constantine* v. *Schneider*, 49 Conn. App. 378, 397, 715 A.2d 772 (1998); *Martin* v. *Liberty Bank*, 46 Conn. App. 559, 562–63, 699 A.2d 305 (1997)." (Internal quotation marks omitted.) *Dionne* v. *Dionne*, 115 Conn. App. 488, 493–94, 972 A.2d 791 (2009).

With respect to the affidavit of the plaintiff's counsel dated February 19, 2015, which was included in the plaintiff's appendix to her appellate brief, the representations contained therein relate to a conversation counsel had with the plaintiff after the July 21, 2014 hearing. The representations in the affidavit are not part of the record on appeal. "A reviewing court cannot go beyond the proper record before it in the determination of issues presented on appeal." *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 318 n.6, 991 A.2d 666, cert.

denied, 297 Conn. 906, 995 A.2d 634 (2010).

There was no evidence in the record to support the plaintiff's claim that she was financially unable to comply with the court's orders.[5] Although it was the defendant's burden to demonstrate that the plaintiff was not in compliance with the court's orders, which he did, it was the plaintiff's burden to demonstrate that her noncompliance was not wilful. "In a civil contempt proceeding, the movant has the burden of establishing . . . the existence of a court order and noncompliance with that order. . . . [I]nability to pay is a defense to a contempt motion. However, the burden of proving inability to pay rests upon the obligor." (Citation omitted; internal quotation marks omitted.) *Marshall* v. *Marshall*, 151 Conn. App. 638, 651, 97 A.3d 1 (2014).

The plaintiff failed to meet her burden of demonstrating an inability to pay the court-ordered obligations. The court denied her counsel's oral request to continue the scheduled July 21, 2014 hearing, which request was made the same day as the scheduled hearing, and no testimony or other documentation was provided as evidence to support her claimed defense. For these reasons, we cannot conclude that the court abused its discretion in granting the defendant's motion for contempt.

## II

The plaintiff's next claim is that the court improperly "terminated [her] alimony without allowing her to testify as to her relationship with her fiancée and her living arrangements." The plaintiff argues: "Because the [trial court] denied [the] plaintiff's motion for reargument and thereby denied her the opportunity to testify, what would be her testimony on this issue is not available in the record." In her appellate brief, the plaintiff then refers to her counsel's February 19, 2015 affidavit as an "offer of proof." She concludes by stating that the evidence before the trial court was insufficient to support the court's finding of cohabitation.

In the court's ruling on the defendant's motion to terminate his alimony obligation, the court found that the plaintiff was cohabitating with Brown, as that term was defined in the parties' agreement. On the basis of the exhibit demonstrating that the plaintiff and Brown were engaged, and drawing an adverse inference from the fact that she was not present to testify, the court granted the defendant's motion.[6]

We first set forth our standard of review of the court's decision. "[W]e will not disturb the trial court's ruling on a motion for modification of alimony or child support unless the court has abused its discretion or reasonably could not conclude as it did, on the basis of the facts presented. . . . Furthermore, [t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the

pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Tow* v. *Tow*, 142 Conn. App. 45, 49–50, 64 A.3d 128 (2013).

The court heard testimony from the defendant that the plaintiff and Brown were cohabitating, and an exhibit provided by the defendant demonstrated that she and Brown were engaged. Additionally, the court drew an adverse inference with respect to the issue of cohabitation because the plaintiff failed to appear to testify at the scheduled hearing. "[A] trier of fact generally may draw an adverse inference against a party for its failure to rebut evidence." *In re Samantha C.*, 268 Conn. 614, 637, 847 A.2d 883 (2004). "After a prima facie case is established, an adverse inference may be drawn against a party for his or her failure to testify, unless the party was entitled to rely upon one of the few exceptional privileges that carry with it a protection from adverse inferences." Id., 638.

We conclude that the court had sufficient evidence, under the circumstances of this case, to make the finding that the plaintiff was cohabiting with Brown in a "relationship similar to that of husband and wife." Under the provisions of the agreement, as incorporated into the dissolution judgment, the defendant was entitled to seek a modification of his alimony obligation. We conclude that the court did not abuse its broad discretion in granting the defendant's motion to terminate the alimony payments.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court handed the letter back to the plaintiff's counsel. It was not admitted as a full exhibit, nor was it marked for identification.

[2] The court's ruling did not mention the student loan.

[3] The plaintiff does not make a separate claim that the court abused its discretion in denying her oral motion on the day of the hearing for a continuance. Additionally, there is no separate claim in the plaintiff's appellate brief challenging the court's denial of her motion for reargument.

[4] Findings of indirect civil contempt must be supported by clear and convincing evidence. *Brody* v. *Brody*, 315 Conn. 300, 302–303, 105 A.3d 887 (2015).

[5] We are not persuaded by the plaintiff's argument that her filing for bankruptcy protection in December, 2013, standing alone, compelled the conclusion that she was financially unable to comply with the court's orders. The parties clearly had contemplated at the time of their divorce that a bankruptcy petition might be filed, by either or both parties, as evidenced by paragraph 21 of the agreement incorporated into the dissolution judgment, which provided that "all of the obligations created by this Agreement are in the nature of support and therefore shall not be dischargeable by either party in the event of bankruptcy."

[6] The plaintiff makes no separate argument and provides no legal analysis challenging the court's denial of her motion for reargument. At the July 21, 2014 hearing, at which time the court denied her oral request for a continuance, it noted that the plaintiff "hasn't come to court in the last three court dates" and, again, she was not there to answer the questions of the defendant's counsel with respect to the issue of cohabitation.