TIMOTHY GRAVIUS, ZONING ENFORCEMENT
OFFICER, ET AL. *v.* BARRY
M. KLEIN ET AL.
(AC 30828)

Harper, Robinson and Dupont, Js.

Argued March 11—officially released September 14, 2010

*Stuart B. Ratner*, for the appellant (named defendant).

*Thomas W. Beecher*, for the appellees (plaintiffs).

*Opinion*

ROBINSON, J. The defendant[1] Barry M. Klein appeals from the judgment of the trial court granting the motion

---

[1] Klein's wife, Nancy A. Klein, also was a defendant at trial but is not a party to this appeal because the stipulated judgment at issue applied only

for contempt filed by the plaintiffs, Timothy Gravius,[2] the zoning enforcement officer for the town of Brookfield, and the town of Brookfield, for the defendant's alleged violation of a stipulated judgment. The sole issue on appeal is whether the court improperly found that the defendant wilfully had violated the terms of the stipulated judgment. We affirm in part and reverse in part the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of the defendant's appeal. At all times relevant to this appeal, the defendant was a resident of 279 Candlewood Lake Road, Brookfield. On September 23, 2005, the plaintiffs filed a complaint against the defendant, alleging that he stored or allowed the storage of more than one unregistered motor vehicle on his property in contravention of Brookfield's zoning regulations. On October 11, 2005, the parties agreed to the issuance of a permanent injunction without bond as part of a stipulated judgment. The stipulated judgment filed October 11, 2005, enjoined the defendant from "[1] using or allowing the use of 279 Candlewood Lake Road, Brookfield, Connecticut for the parking or storage, temporarily or long term, of any motor vehicles which are, or are to be, purchased or sold in conjunction with a commercial or wholesale motor vehicle purchase and sales business or operation, except as set forth in 2.b; and [2] using or allowing the use of 279 Candlewood Lake Road, for the storage of more than one unregistered motor vehicle, and the one unregistered motor vehicle must [a] be owned by, and title must be in the name of, either [the defendant] or Nancy A. Klein; or

to Barry Klein and only he has appealed. We therefore refer to Barry M. Klein in this opinion as the defendant.

[2] Prior to this appeal, Gravius resigned from his position as the zoning enforcement officer for the town of Brookfield, which also is a plaintiff in this action. The plaintiffs timely filed a motion to add Kristi McPadden, the current zoning enforcement officer, as a plaintiff. The court granted that motion.

[b] have 'Dealer Plates' on the vehicle and be parked on the subject property solely for the personal use of [the defendant]."

The stipulation further ordered that "in addition to other penalties as the [c]ourt may then impose, the [d]efendant . . . will be fined $100 for each day that a violation of this order occurs or continues after the date of this [o]rder. In the event the [p]laintiffs prove any violation of this order, the [d]efendant . . . shall pay for the reasonable attorney's fees and costs incurred by the [p]laintiffs."

On October 14, 2008, the plaintiffs filed a motion for contempt, alleging that the defendant was in violation of the stipulated judgment because he continued to use his property for "the parking or storage of motor vehicles, which are, or are to be, purchased or sold in conjunction with a commercial or wholesale motor vehicle purchase and sales business or operation." A hearing on the motion was held on November 24, 2008.

At the hearing, the plaintiffs presented the eyewitness testimony of Stanley Parker, chairman of the Brookfield zoning commission. Parker testified that the defendant maintained a number of registered and unregistered vehicles on his property. Specifically, Parker testified that he observed and took photographs of a Kia Spectra on June 17, 2008; a Buick LeSabre on November 3, 2008; a Chrysler Sebring on July 8 and October 20 and 21, 2008; a Kia Optima on October 6, 20 and 21, 2008; a Ford Contour on October 2 and 6, 2008; a Buick Century on September 23, 2008; a Chevrolet Cavalier on September 22, 2008; an AMC Marlin Rambler on July 31, 2008; and a Ford Thunderbird and a Pontiac Sunbird on August 5, 2008. The plaintiffs also adduced evidence in the form of photographs of the vehicles on the property

and numerous newspaper advertisements for the sale of these same vehicles.[3]

The defendant did not deny that he maintained the vehicles on his property. He acknowledged that the vehicles depicted in the photographs were of vehicles that he had on his property and also admitted that he advertised his vehicles quite frequently. He did deny, however, that the vehicles were being offered for sale in conjunction with a commercial or wholesale motor vehicle purchase and sales business or operation. He testified that some of the vehicles were maintained on his property for personal reasons. For example, he stated that the Chrysler Sebring had belonged to his grandson's roommate, who had requested that he sell the vehicle for him. He also testified that the Kia Spectra was his wife's current vehicle, which replaced her former vehicle, the Ford Contour. Additionally, he testified that the Kia Optima and Chevrolet Cavalier were delivered to his property by a New Milford car dealer so that the defendant could transfer the vehicles to a local mechanic for repairs.

On December 17, 2008, the court issued its memorandum of decision finding that the defendant was in contempt of the stipulated judgment for a total of twenty days. Specifically, the court found that the defendant was in wilful violation of the stipulated judgment on the following seventeen dates: June 17, July 8, August 5, September 2, 20, 22, 23, 24 and 29, October 3, 20, 21 and 30, and November 3, 6, 10 and 12, 2008; and the

[3] The plaintiffs presented advertisements showing that (1) the Buick LeSabre was offered for sale on October 30 and November 3 and 10, 2008; (2) the Chrysler Sebring was offered for sale on September 2 and October 20, 2008; (3) the Kia Optima was offered for sale on October 20, 2008; (4) the Ford Contour was offered for sale on October 3, 2008; (5) the Buick Century was offered for sale on September 24, 2008; (6) the Chevrolet Cavalier was offered for sale on September 20, 22 and 24, 2008; and (7) the AMC Marlin Rambler was offered for sale on September 29, 2008.

court also found that he had violated the stipulated judgment on "several other days" when vehicles were physically observed on his property, bringing the total number of dates of violation to twenty. The court defined "several other days" to mean an additional three days of violation. As required by the stipulated judgment, the court fined the defendant $100 per day, amounting to total fine of $2000. In addition, the court ordered the defendant to pay the plaintiffs' attorney's fees in the amount of $2340. This appeal followed.

On appeal, the defendant claims that the court improperly found that he violated the terms of the stipulated judgment. Specifically, the defendant claims that the plaintiffs failed to meet their burden of proof or present sufficient facts to support the twenty findings of wilful violation of the stipulated judgment. We hold that the court properly concluded that the defendant wilfully violated the stipulated judgment on fifteen dates.[4] We agree, however, with the defendant that there is insufficient evidence in the record to support the court's contempt findings as to November 6 and 12, 2008. Finally, we hold that the record is inadequate to review whether the three additional days that the court termed "several other days" are sufficiently supported by the record.

We first set forth the applicable standard of review. "The abuse of discretion standard applies to a trial court's decision on a motion for contempt." *Ramin* v. *Ramin*, 281 Conn. 324, 336, 915 A.2d 790 (2007). "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . .

[4] These dates include June 17, July 8, August 5, September 2, 20, 22, 23, 24 and 29, October 3, 20, 21 and 30, and November 3 and 10, 2008.

To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Rocque* v. *Design Land Developers of Milford, Inc.*, 82 Conn. App. 361, 370, 844 A.2d 882 (2004); see also *Bowers* v. *Bowers*, 61 Conn. App. 75, 79, 762 A.2d 515 (2000), appeal dismissed, 258 Conn. 710, 784 A.2d 889 (2001). "We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous." *Dionne* v. *Dionne*, 115 Conn. App. 488, 494, 972 A.2d 791 (2009). "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 327, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009). "The resolution of conflicting factual claims falls within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Citations omitted; internal quotation marks omitted.) *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988). "A reviewing authority may not substitute its findings for those of the trier of the facts." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 678, 760 A.2d 989 (2000). "In a civil contempt proceeding, the movant has the burden of establishing, by a preponderance of the evidence, the existence of a court order and noncompliance with that order." *Statewide Grievance Committee* v. *Zadora*, 62 Conn. App. 828, 832, 772 A.2d 681 (2001).

In the present case, the defendant claims that there is insufficient evidence in the record to support the

conclusion that he wilfully violated the stipulated judgment by (1) maintaining vehicles on his property "in conjunction with a commercial or wholesale motor vehicle purchase and sales business or operation" and (2) maintaining more than one unregistered vehicle on his property. After an extensive review of the record, we conclude that the evidence, as well as the rational inferences drawn therefrom, supports fifteen of the court's findings of wilful violation challenged by the defendant. For each of the fifteen dates, we find there to be ample evidence in the record, in the form of photographs, advertisements and testimony, that tend to prove that the defendant knowingly maintained registered and unregistered vehicles on his property that were later offered for sale in the local newspaper, in contravention of the stipulated judgment. Despite this evidence, the defendant argues that there are personal reasons justifying why the vehicles were maintained on his property and subsequently advertised for sale.[5] The court heard these justifications at trial and, in light of the "number of vehicles, the extent of the sales effort and the circumstances surrounding their presence on the property," found the defendant's claim that he was not selling vehicles from his property in conjunction with a commercial business "simply not credible . . . ." Additionally, the court was unconvinced by the defendant's claim that he did not maintain more than one unregistered motor vehicle on his property at a time.[6] The defendant's argument reflects his dissatisfaction with the fact that the court did not accept his

---

[5] The defendant also argues that he was not operating a "junkyard," as defined by § 242-202 of the Brookfield zoning regulations. We do not address this argument because the sole issue in this appeal is whether the court properly determined that the defendant wilfully violated the terms of the stipulated judgment. It is irrelevant to this appeal whether, as the defendant argues, he was in compliance with § 242-202 of the Brookfield zoning regulations.

[6] The record indicates that the court reasonably could have concluded that the defendant had more than one unregistered vehicle on his property. There are numerous photographs of vehicles lacking license plates. One

testimony as the true version of the facts. "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294, cert. denied, 264 Conn. 921, 828 A.2d 617 (2003). The court's finding that the defendant wilfully violated the stipulated judgment on the fifteen dates is not clearly erroneous because there is evidence in the record that supports such a finding on each of those dates.[7]

In contrast to the fifteen dates for which there is evidence in the record to support a finding of contempt, either in the form of photographs, advertisements or testimony, the record does not support the court's finding of a violation on either November 6 or 12, 2008. Therefore, the court's finding that the defendant wilfully violated the stipulated judgment on those dates is clearly erroneous.[8]

specific example of this is a photograph taken on August 5, 2008. The plaintiffs' witness testified that on that date he observed two motor vehicles on the defendant's property lacking license plates, a Ford Thunderbird and a Pontiac Sunbird. The defendant's witness, Ralph Smith, testified that the Pontiac Sunbird belonged to him and that the photograph failed to show that the vehicle had a license plate on the back of the vehicle. It appears that the court did not credit Smith's testimony, and we decline to disturb such a determination. Furthermore, the defendant admitted that the AMC Marlin and Ford Thunderbird, which were both observed on his property, were unregistered at all times in 2008.

[7] The defendant argues that the court found him in contempt on the basis of advertising alone. Based on our review of the record, we disagree. For each of the fifteen dates for which we affirm the court's findings that the defendant was in contempt, there is evidence in the record in the form of testimony and photographs that tends to prove that the vehicles were parked on his property in violation of the stipulated judgment.

[8] We note that although Parker testified that he observed a Buick LeSabre on the defendant's property on "many dates" in November, 2008, there is no evidence in the record that specifically links that observation with November 6 and 12, 2008.

Finally, the court found that the defendant had violated the stipulated judgment on "several other days [when] vehicles were physically observed on the premises." In footnote 2 of its decision, the court states: "While the plaintiffs' witness was not specific as to the number of other days he observed vehicles upon the property, the court will make a reasonable inference and give the word 'several' its common meaning of three or more. Hence, an additional three days have been added." It is unclear from the decision what factual findings provided the basis for the court's conclusion that the defendant violated the stipulated judgment on three additional days or the specific dates on which the violations occurred. The court made reference to Parker's testimony without providing any reason as to how that testimony supported a finding of three additional days of violation. The defendant failed to seek an articulation on this matter. Thus, we are left to surmise as to the factual basis of the finding reached by the court.

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claim] would be entirely speculative." (Internal quotation marks omitted.) *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998). It is well established that "[a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*,

280 Conn. 672, 685–86, 911 A.2d 300 (2006). "[W]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). Accordingly, because the record does not reveal the factual basis for the court's finding, and the defendant failed to file a motion for articulation, we are unable to review this claim.

The judgment is reversed only as to the findings of contempt with respect to November 6 and 12, 2008, and the case is remanded with direction to vacate those contempt findings and the fines related thereto. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.