## GARY W. KRAVETZ v. DONNA H. KRAVETZ
## (AC 31177)

Bishop, Beach and West, Js.

---

Argued November 9, 2010—officially released February 8, 2011

*John F. Morris*, for the appellant (defendant).

*Campbell D. Barrett*, with whom were *Jon T. Kukucka* and, on the brief, *C. Michael Budlong*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Donna H. Kravetz, appeals from the postdissolution judgment of the trial court denying her motion for contempt and granting the motions of the plaintiff, Gary W. Kravetz, for modification of child support and for attorney's fees. The defendant claims that the court erred (1) in granting the plaintiff's motion for modification of child support, (2) in denying her motion for contempt and (3) in granting the plaintiff's motion for attorney's fees. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The parties, both physicians, were married in 1981. Four children were born of the marriage. Following the breakdown of the marriage, the plaintiff filed a complaint seeking dissolution and other relief. On October 20, 2004, the court, *Alvord, J.*, dissolved the marriage. It found that the marriage had broken down irretrievably with no reasonable prospect of reconciliation. The court ordered joint legal custody and that the children's primary residence be with the defendant. As part of the orders issued at the time of dissolution, the plaintiff was ordered to pay the defendant child support in the amount of $1200 per week for the four children. The court noted that "[t]he presumptive child support

amount is approximately $600 per week, and the court finds it appropriate and equitable to apply the deviation criteria to order an amount substantially in excess of the child support guidelines, on the basis of the coordination of total family support." The court also ordered the plaintiff to pay 60 percent of the children's college expenses, after exhaustion of certain accounts of which the children were the beneficial owners, and 50 percent of the children's "extraordinary expenses."

The parties filed various postjudgment motions. On August 5, 2008, the defendant filed a motion for contempt, alleging that the plaintiff failed to comply with the court's order that he pay for certain expenses. On September 2, 2008, the plaintiff filed a motion for modification of the child support order on the ground that the oldest child, Emily, had graduated from high school and had attained the age of eighteen. The plaintiff also filed, on October 17, 2008, a motion for attorney's fees.

On May 18, 2009, the court, *Hon. John R. Caruso*, judge trial referee, issued a memorandum of decision regarding the parties' postjudgment motions. The court denied the defendant's motion for contempt. The court granted in part the plaintiff's motion for modification of the child support order, agreeing that the support order should be reduced but not in the amount requested by the plaintiff. The court granted the plaintiff's motion for attorney's fees and ordered the defendant to pay the plaintiff's counsel $5000 within thirty days. This appeal followed.

I

The defendant first claims that the court erred in granting the plaintiff's motion for modification of the child support order. We disagree.

As a preliminary matter, we set forth our standard of review. "An appellate court will not disturb a trial

court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 800, 930 A.2d 811 (2007).

In his motion for modification, the plaintiff requested that the court reduce child support by $300 per week because Emily had reached the age of majority and had graduated from high school. The plaintiff also requested that the court order that as each child reaches the age of eighteen and graduates from high school that child support automatically be reduced by $300 per child. The court agreed that the plaintiff's child support should be reduced but disagreed with the amount suggested by the plaintiff. The court stated that because "the trial court doubled the presumptive support of $600 to $1200 for the four children, the plaintiff has simply divided the $1200 by the number of children, i.e., four. The child support guidelines in effect . . . at the time of the dissolution set forth that child support for four children should be $600 and for three children it should be $541, a difference of $59. Therefore, the court reduces the child support by $209 (since the trial court doubled the presumptive amount), retroactive to the date the motion was filed. In the future the parties should reduce the child support in the same manner as each child is no longer statutorily eligible for support."

It was proper for the court to issue a reduction in child support as a result of the oldest child having reached the age of eighteen and having completed high school. "General Statutes § 46b-84 (b) authorizes child support orders only until the child reaches the age of eighteen, or if the child is in high school, until age

nineteen."[1] *Keeys* v. *Keeys*, 43 Conn. App. 575, 577, 684 A.2d 1214 (1996). The defendant, however, does not appear to challenge the fact that a reduction was taken but appears to challenge only the methodology used and the amount of reduction. She argues that the court miscalculated the amount to be $209 because doubling the presumptive difference amounts to $118, not $209. According to the defendant, the correct amount of weekly child support payments should have been $1082 rather than $991.

After the defendant filed her brief, the trial court, in response to a motion for articulation filed by the defendant, articulated its basis for the reduction of child support. The court stated that in the judgment of dissolution, the court doubled the presumptive child support of $600 to $1200. The court explained that it first reduced the award of $1200 by $59 because $59 is the difference between the presumptive child support amounts for four children and for three children. The court explained that in the judgment of dissolution, the court doubled the presumptive child support of $600 to $1200, thereby adding an additional $600 to the amount of presumptive child support. The court reduced that additional award of $600 by one fourth, or $150. Thus, the reduction for the oldest of the four children having obtained the age of majority and graduated high school was $59 plus $150, which equals $209.

The court's articulation amplifies its decision and explains, in more precise terms, the calculations taken to arrive at the $209 reduction in child support. Contrary

---

[1] General Statutes § 46b-84 (b) provides in relevant part that "[i]f there is an unmarried child of the marriage who has attained the age of eighteen and is a full-time high school student, the parents shall maintain the child according to their respective abilities if the child is in need of maintenance until such child completes the twelfth grade or attains the age of nineteen, whichever occurs first. . . ."

to the defendant's contention, the court did not miscalculate the reduction taken but, rather, reached its conclusion rationally.

## II

The defendant next claims that the court erred in denying her motion for contempt, in which she alleged that the plaintiff failed to comply with the court's order that he pay 60 percent of college expenses for the minor children and 50 percent of "extraordinary expenses." We disagree.

With respect to extraordinary expenses, the judgment of dissolution provided that "[t]he parties shall each be responsible for one-half of the cost of any extraordinary expenses for the children such as camp or private school and any major expense exceeding $500.00 provided both parents are consulted and consent in advance to the expenditure, which consent shall not be unreasonably withheld. Any camp or private school expense, other than medically necessary expenses, greater than $2,500 per child per calendar or school year, respectively, can be reasonably not consented to by a parent."

The judgment also provided that "all Uniform Gift to Minors [UGMA][2] accounts shall hereafter have both parents as co-custodians. All investment decisions shall be made by the plaintiff. Neither parent nor both parents acting together shall use the accounts for anything but the children's sole benefit. After the liquidation of the UGMA accounts, both parents shall be responsible for

[2] "The Connecticut Uniform Gifts to Minors Act, General Statutes §§ 45a-546 through 45a-556, was replaced in 1995 by the Connecticut Uniform Transfers to Minors Act, General Statutes §§ 45a-557 through 45a-560b." *Sender* v. *Sender*, 56 Conn. App. 492, 494 n.1, 743 A.2d 1149 (2000). Nevertheless, because the trial court and the parties referred to the Connecticut Uniform Gifts to Minors Act (UGMA) during these proceedings, in this opinion we will refer to the Connecticut Uniform Transfers to Minors Act as the UGMA.

the four minor children's college expenses, determined as equivalent to the cost that the University of Connecticut charges Connecticut residents to be in residence at Storrs, Connecticut, with the plaintiff contributing 60% and the defendant contributing 40%. Such expenses shall include tuition, room, board, fees, and reasonable transportation expenses incurred by the children during their attendance at a junior college, four-year college or vocational/technical school beyond high school. The obligation herein shall be subject to both parents' participation in the decision-making process relating to such college education. The court shall retain jurisdiction."

We first set forth the applicable standard of review. "The abuse of discretion standard applies to a trial court's decision on a motion for contempt. . . . A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Gravius* v. *Klein*, 123 Conn. App. 743, 748–49, 3 A.3d 950 (2010).

A

The defendant argues that the court erred in denying her motion for contempt because it considered the motion under the provision of the judgment of dissolution concerning educational support orders, when the motion was brought with respect to the provision pertaining to extraordinary expenses. We disagree.

In response to the defendant's argument that the court improperly analyzed her claim for extraordinary

expenses[3] under the educational support order, we direct our attention to the following language in the court's memorandum of decision: "The defendant commenced her testimony by introducing a number of documents that she claimed supported expenditures she made on behalf of Emily and for which she feels falls within the plaintiff's obligation to pay 60 percent. These expenditures do not fall within the charges covered by the educational support order made by the court and are the sole obligation of the defendant. Her motion for contempt is denied." In its decision, the court later clarified its reasoning.

In her motion for contempt, the defendant claimed both that the plaintiff failed to pay 50 percent of extraordinary expenses and failed to pay 60 percent of college expenses for Emily. The court applied the educational support order to the defendant's claim for college expenses.[4] Later in its decision, the court specifically addressed extraordinary expenses and stated: "The expenses claimed by the defendant as extraordinary do not fall within that category, especially with the doubling of the child support."[5] The court addressed the issue of extraordinary expenses separately from that of college expenses and found that the expenses claimed by the defendant were not extraordinary expenses. We disagree with the defendant's argument that, by considering only whether her claim of extraordinary expenditures fell within the educational support

[3] The extraordinary expenses that were the subject of the defendant's motion for contempt included an automobile and car insurance for Emily, summer camp for Brent, Chase and Reed, and school trips.

[4] In the absence of a motion for articulation, we read any ambiguity in this regard to support, rather that to undermine, the judgment. See *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 707, 981 A.2d 497 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010).

[5] The defendant does not challenge the court's denial of the motion for contempt on the ground that the expenses were not extraordinary; rather, the defendant essentially ignores that the court made such a finding.

order, the court failed to consider the contempt claim presented. The court expressly stated that it did not find the expenses claimed by the plaintiff to be extraordinary but that they were rather contemplated to be covered by the doubled child support. We cannot conclude that the court applied an incorrect provision of the dissolution judgment in making this finding or in denying the extraordinary expense portion of the defendant's motion for contempt.

B

The defendant next claims that the court erred by adding terms to the educational support order contained in the judgment of dissolution. We disagree.

In its 2009 postdissolution judgment, the court found the following with respect to the children's accounts. At the time of dissolution, each of the parties' four children had an account.[6] The defendant "essentially wiped out" Emily's account to pay for a number of items that she claimed were for the " 'sole benefit' " of her daughter. The court noted that the defendant's claim that the accounts could be used for any reason would require a tortured reading of the orders issued in connection with the dissolution judgment. The court stated that the dissolution judgment "clearly tied" the accounts to the educational support order and that "[t]he expenditures for which [the] defendant seeks reimbursement are not covered by such order. The defendant is ordered to reinstate Emily's account to the value at the time of dissolution, transfer the custodianship to the plaintiff and the plaintiff shall use 50 percent of the amount to meet his obligations under the educational support order for Emily's college expenses for her spring 2009 semester, and any

---

[6] The court found that Emily's account contained $15,136, Reed's account contained $9955, Brent's account contained $8199 and Chase's account contained $6389.

remaining balance should be applied to the fall 2009 semester."

The defendant argues that the judgment of dissolution clearly and unambiguously provided that "[n]either parent nor both parents acting together shall use the accounts for anything but the children's sole benefit." She contends that the only restriction placed on the usage of the accounts was that the accounts be used for the sole benefit of the children. She argues that the court, in its 2009 postdissolution judgment, added terms to the dissolution judgment when it limited the use of the accounts to college expenses only.

"[C]ourts have continuing jurisdiction to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . . When an ambiguity in the language of a prior judgment has arisen as a result of postjudgment events, therefore, a trial court may, at any time, exercise its continuing jurisdiction to effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . ." (Citation omitted; internal quotation marks omitted.) *Mickey* v. *Mickey*, 292 Conn. 597, 604, 974 A.2d 641 (2009).

In the dissolution judgment, when fashioning orders pertaining to the children's accounts, the court stated, in paragraph 15: "Neither parent nor both parents acting together shall use the accounts for anything but the children's sole benefit. After the liquidation of the UGMA accounts, both parents shall be responsible for the four minor children's college expenses . . . ." As a result of the defendant's postjudgment motion for contempt, a dispute over this language in the dissolution judgment arose. At the hearing on the motion for contempt and in posthearing briefs, the defendant argued that the only limitation on the use of the accounts was

that they were for the sole benefit of the children. The plaintiff argued that in accordance with the dissolution judgment, the accounts were to be used for the children's college educations. The court, in the exercise of its continuing jurisdiction to effectuate the judgment of dissolution, determined that the accounts were tied to the educational support order. In paragraph 15 of the dissolution judgment, the court referenced the accounts and then stated that the parties were obligated to pay certain respective percentages of college expenses once the accounts were depleted. It is clear from this that the accounts were to be used for educational expenses. The court was acting within its equitable powers so to determine. See *Roberts* v. *Roberts*, 32 Conn. App. 465, 471, 629 A.2d 1160 (1993) ("it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [the original] judgment" [internal quotation marks omitted]).

The defendant additionally argues that the dissolution judgment fashioned orders pertaining to UGMA[7] accounts and that the children did not have UGMA accounts but, rather, they had informal custodial accounts. As a result of their being custodial accounts, as opposed to UGMA accounts, the defendant contends that the orders contained in the dissolution judgment are not applicable to the accounts at issue. Thus, the defendant claims that the court, in its 2009 postdissolution judgment, erred in applying the UGMA provisions of the dissolution judgment to the accounts at issue.

When this issue arose at the hearing, the court stated: "I would imagine in [the dissolution judgment] when [the court] made reference to UGMA accounts, it's accounts of moneys being held for the children's benefit. [The court] might have called them UGMA, you

---

[7] See footnote 2 of this opinion.

might have called them custodial. What's the difference?" The court proceeded to apply the provisions of the dissolution judgment, which referenced UGMA accounts, to the children's accounts. The court's reference in its dissolution judgment to "UGMA" accounts appears to be akin to a scrivener's error. See footnote 2 of this opinion. In its 2009 postdissolution judgment, the court noted the difference in terminology and protected the integrity of the judgment of dissolution by applying paragraph 15 to the children's accounts. The record is clear that, at the time of the judgment of dissolution, there technically were no "UGMA" accounts, and no provision was made regarding "custodial accounts." The court quite clearly effectuated the intent of the dissolution court.

### III

The defendant last claims that the court erred in awarding attorney's fees to the plaintiff. We disagree.

In his objection to the defendant's postjudgment motion for contempt, the plaintiff requested that the court deny the defendant's motion and award him attorney's fees for defending the motion. In its decision, the court denied the defendant's motion for contempt and awarded the plaintiff $5000 in attorney's fees.

"Our law for awarding attorney's fees in contempt proceedings is clear. General Statutes § 46b-87 provides that the court may award attorney's fees to the prevailing party in a contempt proceeding. The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . In making its determination, the court is allowed to rely on its familiarity with the complexity of the legal issues involved. Indeed, it is expected that the court will bring its experience and legal expertise to the determination of the reasonableness of attorney's fees. . . . [T]he award of attorney's

fees pursuant to § 46b-87 is *punitive*, rather than compensatory . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Gil* v. *Gil*, 110 Conn. App. 798, 806–807, 956 A.2d 593 (2008).

The defendant argues that because the court's orders regarding the defendant's contempt motion, extraordinary expenses, custodial funds and college payments were "so weighted in the plaintiff's favor," and because the plaintiff had sufficient income to afford his own fees, the trial court's award of fees can only be reasonably considered to be an "improper punishment award."

The defendant cannot prevail on her argument. The plaintiff was the prevailing party with respect to the defendant's motion for contempt, and, thus, it was within the court's discretion to award him attorney's fees. The defendant's argument that the plaintiff can afford his attorney's fees is unavailing because there is no requirement in § 46b-87 that attorney's fees be determined in relation to the financial positions of the parties. See *Esposito* v. *Esposito*, 71 Conn. App. 744, 749, 804 A.2d 846 (2002). We cannot conclude that the court abused its discretion when it awarded the defendant attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.