SUSAN ALEY *v.* WILLIAM ALEY
(AC 26825)

Flynn, C. J., and DiPentima and Mihalakos, Js.

Submitted November 28, 2006—officially released May 15, 2007

*John F. Morris,* for the appellant (defendant).

*Howard M. Gould,* with whom, on the brief, was *Patricia J. Gillin,* for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The defendant, William Aley, appealed from the judgment of the trial court dissolving his marriage to the plaintiff, Susan Aley. On appeal, the defendant claimed that the court (1) improperly proceeded to judgment in his absence, without adequate notice to him or an opportunity to be heard, (2) lacked jurisdiction to order a certain home equity payment obligation to be characterized as spousal support and nondischargeable in bankruptcy and that the home equity order lacked clarity, and (3) improperly entered certain financial orders without evidentiary support.[1] In *Aley* v. *Aley,* 97 Conn. App. 850, 908 A.2d 8 (2006) (*Aley I*), we addressed the defendant's first two claims and found them to be without merit. On his third claim, while retaining jurisdiction over the appeal, we remanded the matter to the trial court with direction to articulate its findings as to the value of the parties' marital home and the defendant's gross and net earnings. After giving the parties the opportunity to file supplemental briefs, we now address the merits of the defendant's third

---

[1] The defendant withdrew his appeal from the court's postjudgment award of attorney's fees.

claim and agree in part with the defendant's claim that the court improperly entered certain financial orders without evidentiary support. Accordingly, the judgment is reversed as to the child support related orders only, and the case is remanded for a new hearing on these issues.

The following facts are relevant to our resolution of the defendant's claim on appeal. The defendant failed to attend the parties' marital dissolution hearing because he was on vacation. The plaintiff testified at the hearing and submitted an updated financial affidavit, along with her claims for relief in which she set forth her proposed orders. The defendant had an affidavit on file with the court that was approximately three months old. After the hearing, the court ruled orally in open court that it was adopting paragraphs one through twelve, inclusive, of the plaintiff's claims for relief, making them the orders of the court.[2] The court granted the dissolution and awarded the parties joint legal custody of their minor child and awarded the plaintiff primary physical custody. The court, by adopting the remaining paragraphs of the plaintiff's claims for relief, entered other financial orders for asset distribution and payment obligations, making no explicit findings underlying those orders. This appeal followed.

On appeal, the defendant claims that the court improperly entered "financial orders for asset distribution and payment obligations when no evidence supporting the values, expenses, and ability to pay by the obligor was presented." Specifically, he raises five claims of evidentiary insufficiency, arguing that the court had no evidence regarding: (1) the value of the marital home; (2) the mortgage payments due on the

---

[2] The court further ordered, with respect to the marital residence, that the defendant pay or make satisfactory arrangements with the utility companies within twenty days of the date of judgment.

home; (3) the defendant's income, other than his financial affidavit; (4) his insurability or the availability and cost of life insurance; and (5) the cost of medical insurance premiums for the minor child. For purposes of our analysis, we group these claims into two categories: claims one and two fall under the property distribution orders, and claims three, four and five fall under the child support related orders. We disagree with the defendant's claims regarding the property distribution orders, but we do agree that the court's finding regarding the defendant's income was without evidentiary support and, therefore, reverse the judgment of the trial court regarding the child support related orders and remand the case for a new hearing on these issues.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 843, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005). Although "[i]t is true that often [t]he rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other," this is not always the case, especially where "[t]he finances of the parties [are] not complicated." (Internal quotation marks omitted.) *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 710, 533 A.2d 1226 (1987). "Every improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to

other factors." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999); see *Lowe* v. *Lowe*, 47 Conn. App. 354, 358, 704 A.2d 236 (1997) (reversing order of postmajority support but upholding alimony order); *Main* v. *Main*, 17 Conn. App. 670, 676, 555 A.2d 997 (reversing child support order while upholding all remaining financial orders), cert. denied, 211 Conn. 809, 559 A.2d 1142 (1989); *Zern* v. *Zern*, 15 Conn. App. 292, 297, 544 A.2d 244 (1988) (reversing judgment only as to support orders, holding that "court's division of the parties' assets was distinct and, on the facts of [that] case, separable from its determination of alimony and child support"); *Cuneo* v. *Cuneo*, supra, 709–11 (reversing orders regarding division of property but upholding orders regarding alimony and support). With these principles in mind, we review the merits of the defendant's claims.

I

The defendant claims that the court had no evidentiary support for its findings related to the value of the marital home or the mortgages due on the home, and, therefore, its property distribution orders were improper. We do not agree.

In *Aley I*, we directed the trial court, in part, to articulate its findings as to the fair market value of the parties' house. In response, the court articulated, in relevant part: "With regard to the fair market value of the house, the court used the defendant's valuation contained in his financial affidavit filed in court on April 26, 2006, of $129,750." A careful review of the defendant's financial affidavit reveals that he did, in fact, list the value of the house at $129,750. The plaintiff's affidavit listed the value as "unknown." Certainly, it was within the sound discretion of the court to credit the value listed in the defendant's affidavit. As our Supreme Court has explained: "An 'affidavit' is a sworn 'declaration of

facts' "; *Nizzardo* v. *State Traffic Commission,* 259 Conn. 131, 164, 788 A.2d 1158 (2002); upon which the court may properly base its financial orders. *Ashton* v. *Ashton,* 31 Conn. App. 736, 750, 627 A.2d 943 (court "could properly base its financial orders on the information provided to it in [one party's] financial affidavit"), cert. denied, 228 Conn. 901, 634 A.2d 295 (1993). Accordingly, we find no merit to this assertion.

As to the evidence regarding the mortgages due on the home, a review of the transcript and the financial affidavits reveals that the court had evidence regarding these values, albeit scant evidence. On his financial affidavit, the defendant listed the home mortgage at $139,000. The plaintiff listed it as $100,000.

At trial, the plaintiff explained that there was a first mortgage in the approximate amount of $97,000, which was held by Citizens Bank, and that she wanted to hold the defendant harmless as to that loan. She further testified that there also was a home equity line of credit in the approximate amount of $24,000, for which she wanted the defendant to assume responsibility. When questioned by the court, the plaintiff testified that the money from the line of credit had been used by the defendant to pay for him to attend college. The plaintiff also testified that the defendant had a sizeable retirement account, which was listed on his affidavit at $48,787.02, for which she was making no claim in exchange for the home.

On the basis of this evidence, the court ordered that the defendant quitclaim his interest in the home to the plaintiff and that he pay the $24,000 home equity line of credit. It further ordered that the plaintiff hold the defendant harmless as to the $97,000 first mortgage. We conclude that the court had sufficient evidence on which to base these orders.

## II

The defendant also claims that the court had no evidence to support its orders regarding the care and support of his minor daughter. Specifically, he argues that the court had no evidence regarding the defendant's income, other than his financial affidavit, and had no evidence of his insurability or as to the availability and cost of life insurance, or as to the cost of medical insurance premiums for the minor child. We agree that there was no evidence to support the court's finding as to the defendant's income, and, because these matters are closely interwoven, we reverse all child support related orders and remand the matter for a new hearing on these issues.

In *Aley I*, we directed the trial court, in part, to articulate its findings as to the defendant's gross and net earnings. In response, the court articulated, in relevant part: "As to the gross and net income of the defendant, the court found that the defendant had a gross income of $904 per week and a net income of $676 per week per the guideline worksheet, again, after making specific inquiry of the plaintiff's counsel, who represented to the court that this was based on a 'pay stub' that was provided to her by the defendant."

Practice Book § 25-30 sets forth the statements that each party is responsible for filing during a dissolution or child support matter, which provides in relevant part: "(a) . . . at the time a dissolution of marriage . . . is scheduled for a hearing, each party shall file, where applicable, a sworn statement . . . of current income, expenses, assets and liabilities. . . . Unless otherwise ordered by the judicial authority, all appearing parties shall file sworn statements within thirty days prior to the date of the decree. Notwithstanding the above, the court may render pendente lite and permanent orders,

including judgment, in the absence of the opposing party's sworn statement.

"(b) . . . at least ten days prior to the date of the final limited contested or contested hearing, the parties shall file with the court and serve on each appearing party written proposed orders.

"(c) The written proposed orders shall be comprehensive and shall set forth the party's requested relief including, where applicable, the following: (1) a parenting plan; (2) alimony; (3) child support; (4) property division; (5) counsel fees; (6) life insurance; (7) medical insurance; and (8) division of liabilities.

"(d) The proposed orders shall be neither factual nor argumentative but shall, instead, only set forth the party's claims.

"(e) Where there is a minor child who requires support, the parties shall file a completed child support and arrearage guidelines worksheet at the time of any court hearing concerning child support; or at the time of a final hearing in an action for dissolution of marriage . . . ."

"General Statutes § 46b-215b requires the court to consider and to apply the child support and arrearage guidelines (guidelines) to all determinations of child support amounts. Section 46b-215a-2a of the guidelines, as embodied in the Regulations of Connecticut State Agencies, provides procedures for using the child support worksheet (worksheet) to determine the presumptive child support payments and the health care coverage contributions. The presumptive child support payments and health care coverage contributions indicated by the guidelines should be identical to the court's orders for such payments and contributions by the noncustodial parent to the custodial parent pursuant to § 46b-215a-3 of the guidelines unless application of the

guidelines is inequitable or inappropriate under the circumstances. . . . If the court deviates from the presumptive support amount, it must determine and state on the record (1) the presumptive amount of the weekly support order recommended by the guidelines and (2) specific findings that application of the presumptive support guidelines is inequitable or inappropriate. . . . The Supreme Court has determined that stating these findings on the record will facilitate appellate review." (Citations omitted.) *Tracey* v. *Tracey*, 97 Conn. App. 122, 126–27, 902 A.2d 729 (2006).

In this case, the defendant did not attend the dissolution hearing, nor did he submit an updated financial affidavit, proposed orders or a child support guidelines worksheet as required. The defendant's April 13, 2005 sworn financial affidavit listed his gross weekly income at $846.16 and his net weekly income at $657.16. In contrast, on the plaintiff's child support guidelines worksheet, her attorney listed the defendant's gross weekly income at $904 and his net weekly income at $676. This worksheet is not a sworn document but bears the typewritten name of the preparer, in this case, the plaintiff's counsel. The plaintiff offered no testimony regarding the defendant's income, nor was any documentary evidence submitted to support a finding contrary to the amounts listed on the defendant's April 13, 2005 sworn financial affidavit.[3] Although we recognize that the guidelines create a legal presumption as to the

---

[3] The only testimony regarding child support calculations was as follows:

"[The Plaintiff's Counsel]: And the two of you have agreed that he will pay child support in accordance with the child support guidelines. Is that correct?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: And I've computed that at $139 per week. Is that correct?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: And are you asking that the Court order that amount?

"[The Plaintiff]: Please. Yes."

amount of child support payments; see id., 126–27; the figures going into that calculation on the worksheet must be based on some underlying evidence. Here, when questioned by the court as to how she obtained the guideline worksheet figures, the plaintiff's counsel represented that the defendant had a financial affidavit on file and that he had provided counsel with a recent "pay stub." This "pay stub," however, was not in evidence, nor were the figures from the worksheet supported by any other evidence, testimonial or otherwise. Furthermore, they were not consistent with the defendant's sworn financial affidavit.

This court, as well as our Supreme Court, repeatedly has stated that representations of counsel are not evidence. See, e.g., *State* v. *Sauris*, 227 Conn. 389, 404, 631 A.2d 238 (1993), overruled in part on other grounds by *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 309, 852 A.2d 703 (2004); *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 154, 496 A.2d 476 (1985); *Baker* v. *Baker*, 95 Conn. App. 826, 832, 898 A.2d 253 (2006); *Irizarry* v. *Irizarry*, 90 Conn. App. 340, 345, 876 A.2d 593 (2005); *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001); *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 26, 783 A.2d 1157 (2001); *Constantine* v. *Schneider*, 49 Conn. App. 378, 397, 715 A.2d 772 (1998); *Martin* v. *Liberty Bank*, 46 Conn. App. 559, 562–63, 699 A.2d 305 (1997). The court's determination of child support and child support related orders must be based on evidence and not on mere representations of counsel. In this case, the court had figures that had been provided by the defendant in a sworn document, and, although the court was not bound to accept those figures, a contrary finding had to be based on proper evidence and not on mere representations of counsel contained in an unsworn document.

Although the discrepancy in the amount is minor, with the net income contained in the defendant's financial affidavit at $657.16 and in the guideline worksheet

at $676, amounting to a difference of less than 3 percent, the guideline worksheet figures used by the court in formulating its child support related orders had no evidentiary basis. Accordingly, we must remand the matter for a new hearing.

The judgment is reversed as to the child support related orders only and the case is remanded for a new hearing on those issues. In all other respects, the judgment is affirmed.

In this opinion DiPENTIMA, J., concurred.

MIHALAKOS, J., dissenting in part. My dissent, as reported in *Aley* v. *Aley*, 97 Conn. App. 850, 908 A.2d 8 (2006) (*Mihalakos, J.*, dissenting in part) (*Aley I*), concerned two matters, one of which the majority has adopted in this decision, relative to the valuation of the marital home. I affirm the second portion of my prior dissent, concerning the trial court's determination of the net and gross income of the defendant, William Aley. See id., 857. The majority in *Aley I* remanded both of these matters for articulation by the court. Id., 855. After remand, the majority concluded that there was sufficient evidence for the court to determine the value of the marital home. The only issue remaining, therefore, was whether there was sufficient evidence to determine the net and gross income of the defendant.

"[I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 765, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). In this case, although the defendant submitted a financial affidavit, which was several months old, he failed to show up for the dissolution hearing without giving notice to the court or requesting

a continuance, and he never submitted a child support guidelines worksheet as required. The plaintiff, Susan Aley, however, did submit a guidelines worksheet. The majority has recognized that the guidelines worksheet creates a legal presumption as to the amount of child support payments. Because the defendant did not attend the hearing, there was no testimony from him with regard to the representations in his financial affidavit or the representations in the plaintiff's guidelines worksheet.

This court has concluded that "a party who fails to submit a child support guidelines worksheet is precluded from complaining of the alleged failure of the trial court to comply with the guidelines . . . ." (Internal quotation marks omitted.) *Tracey* v. *Tracey*, 97 Conn. App. 122, 129, 902 A.2d 729 (2006). In the present case, the plaintiff submitted a guidelines worksheet as required. The defendant, having failed to submit a guidelines worksheet, now cannot argue that the court should not have relied on the plaintiff's guidelines worksheet as an evidentiary basis for its child support orders.

The majority concludes that because the pay stub, on which the plaintiff's guidelines worksheet was based, was not in evidence, a remand is necessary with regard to the court's child support orders. The court, however, was free to accept or reject the amount of child support called for in the plaintiff's guidelines worksheet. Additionally, the court was permitted to use the defendant's financial affidavit as an evidentiary basis for the plaintiff's guidelines worksheet, and the record indicates that the court in fact did rely, in part, on the defendant's affidavit when fashioning its child support orders. In its articulation, the court stated: "Based on the testimony of the plaintiff, the representations made by counsel, *the financial affidavits in the file*, the state of Connecticut guideline worksheet provided and considering the relevant statutory provisions

of chapter 815j of the Connecticut General Statutes, the court entered orders . . . ." (Emphasis added.)

Finally, the majority notes that the difference between the income listed in the defendant's financial affidavit and the plaintiff's guidelines worksheet was $657.16 and $676, respectively, or less than 3 percent. If the defendant had submitted an updated financial affidavit with regard to his income, he would have had an opportunity to dispute this discrepancy. Having failed to take advantage of this opportunity, the defendant cannot claim now that the court's child support orders had no evidentiary basis.

For the foregoing reasons, I would affirm the judgment of the trial court.