******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARIA F. MCKEON *v.* WILLIAM P. LENNON
(AC 34078)
(AC 34710)
(AC 35204)

Gruendel, Lavine and Mullins, Js.

*Argued December 8, 2014—officially released February 17, 2015*

(Appeal from Superior Court, judicial district of

Tolland, Suarez, J.)

*Maria F. McKeon*, self-represented, the appellant (plaintiff).

*Proloy K. Das*, with whom was *Debra C. Ruel*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. In these consolidated appeals, the plaintiff, Maria F. McKeon, appeals from several judgments of the trial court rendered in relation to the judgment dissolving her marriage to the defendant, William P. Lennon. On appeal, the plaintiff claims that the court improperly (1) granted the defendant's motion for modification of child support, (2) denied the her motion for modification of child support, (3) modified the defendant's child support obligation (AC 34078), (4) denied the her motion for a finding of contempt (AC 35204), and (5) denied her motion for attorney's fees (AC 34710). We disagree and, accordingly, affirm the judgments of the trial court.

These appeals arise from of a series of postjudgment motions related to the parties' 2007 dissolution of marriage. The plaintiff and defendant were married on August 29, 1981. During their twenty-six year marriage, the parties had three children. In 2005, the plaintiff initiated an action for dissolution of marriage. On December 31, 2007, the court rendered judgment dissolving the marriage (dissolution judgment) and entered various orders.

In the dissolution judgment, the court made several relevant factual findings. The court found that the defendant was a vice president at Electric Boat, earning a base salary of $225,420, an annual bonus, stock options, restricted stock awards, and a pension. The court found that the plaintiff was a highly skilled and capable corporate attorney, who in the past had sometimes earned in excess of the defendant's salary. In the years leading up to the divorce, the plaintiff had worked part-time in order to be the primary caregiver to their three children. Despite working part-time, she had been able to earn gross income of $78,500 from mid-July, 2007 through December 12, 2007.

The court issued various orders in connection with the dissolution judgment, including: child custody, division of assets of the marriage, and alimony and child support. First, the dissolution judgment set out a parenting plan regarding the parties' two minor children. The parties were to share joint legal custody of the children, but the plaintiff's home would serve as the children's primary residence. Next, the dissolution judgment ordered the defendant to pay the plaintiff $439 per week in child support for the parties' two minor children. The dissolution judgment also ordered the parties to each pay 50 percent of the cost of the children's child care, their after school care and transportation, and their private school tuition. The judgment ordered the parties to share all costs over $150 for the children's extracurricular activities, while the plaintiff was ordered to pay for all costs under $150.

The dissolution judgment also awarded alimony to

the plaintiff in the amount of $900 per week for a period of fourteen years. This order was modifiable, but not terminable, upon the plaintiff's remarriage or cohabitation. The court awarded the plaintiff additional alimony in the form of an irrevocable interest in the defendant's future annual employment bonuses, executive stock options, and awards of restricted stock. The plaintiff was to receive 50 percent of the defendant's bonuses, stock options, and restricted stock awarded in 2008, 2009, and 2010. The plaintiff was to then receive 40 percent of the defendant's bonuses earned in 2011, 2012, and 2013, and receive 30 percent awarded to him in each year from 2014 through 2021.

In May, 2008, fewer than six months after the dissolution judgment was rendered, the plaintiff filed a motion for modification in which she requested, inter alia, that child support be raised from $439 per week to $1700 per week. On June 10, 2008, the court denied the motion without a hearing. From that judgment, the plaintiff appealed to this court, which heard argument on the matter on November 18, 2010.[1] *McKeon* v. *Lennon*, 131 Conn. App. 585, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011). On appeal, this court concluded that the trial court improperly denied the plaintiff's motion without first conducting a hearing, and, therefore, we reversed the judgment and remanded the matter to the trial court for further proceedings. Id., 599–600, 614–15. That opinion was released on September 27, 2011.

While the appeal of the 2008 motion for modification was pending before this court, the plaintiff filed another motion for modification of child support with the trial court on April 22, 2010. The plaintiff's motion requested the court to increase the defendant's child support obligation in light of the plaintiff's increased expenses, her decreased net income, and the defendant's increased income since the dissolution judgment. On July 14, 2010, the defendant filed his own motion for modification of child support on the basis that one of their two minor children had turned eighteen years old and had graduated high school. The court scheduled a hearing on both motions in May, 2011.

On May 25, May 26, and June 1, 2011, the trial court held a contested hearing on the plaintiff's and the defendant's motions for modification. On October 20, 2011, the court issued a memorandum of decision granting the defendant's 2010 motion for modification and denying the plaintiff's 2010 motion for modification. The court ordered the defendant's child support obligation to be reduced from $439 per week to $400 per week. This modification reflected the change from support for two minor children, to support for only one minor child. From this judgment, the plaintiff appealed (AC 34078).

On April 25, 2012, pursuant to this court's remand,

the trial court held a contested hearing on the plaintiff's 2008 motion for modification. Prior to the hearing, the plaintiff had also filed a motion for attorney's fees and a motion for contempt. At the hearing, the parties presented evidence on all three motions. As a result of the complicated procedural history of this case, the court was required to determine whether it could consider all changes in circumstances since the 2007 dissolution judgment, or whether it was limited to looking back to only 2011, when the court ruled on the 2010 motions for modification.

In November, 2012, the court issued its memorandum of decision, denying the plaintiff's motion for modification of child support, motion for attorney's fees, and motion for contempt. In doing so, the court considered the circumstances of the parties going back to the 2007 dissolution judgment. Further, the court found that the 2011 child support modification order was in accordance with the child support guidelines and remained equitable and appropriate given the circumstances of the case. From these judgments, the plaintiff also appealed (AC 34710 and AC 35204).

We now consider each of the plaintiff's three consolidated appeals (AC 34078, AC 34710, and AC 35204). Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the court erred in concluding that there had been a substantial change of circumstances with regard to the defendant's motion for modification and that there had been no substantial change with regard to the plaintiff's motion. We disagree.

We begin by setting forth the appropriate standard of review. "The scope of our review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Nevertheless, we may reverse a trial court's ruling on a modification motion if the trial court applied the wrong standard of law. . . ."

"[General Statutes §] 46b-86 (a) governs the modification or termination of an alimony or support order after the date of a dissolution judgment.[2] When . . . the disputed issue is [child support], the applicable provision of the statute is § 46b-86 (a), which provides that a final order . . . may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of dem-

onstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671–72, 81 A.3d 215 (2013). We now review the court's conclusions as to whether there was a substantial change in circumstances.

A

The plaintiff claims that the court improperly denied her motion for modification of child support, pursuant to § 46b-86 (a), when it concluded that she had failed to meet her burden of establishing a substantial change of circumstances. We disagree.

"A party moving for a modification of a child support order must clearly and definitely establish the occurrence of a substantial change . . . ." *Weinstein* v. *Weinstein*, 104 Conn. App. 482, 492, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 372 (2008). As the power to modify is limited to adapting the order to changes in circumstances, the court must limit its inquiry to a comparison between the current conditions and the conditions at the time of the last order. *Borkowski* v. *Borkowski*, 228 Conn. 729, 738, 638 A.2d 1060 (1994).

At the May, 2011 hearing, the plaintiff presented evidence seeking to establish her claim of a change in circumstances. She provided financial affidavits indicating her inability to earn income consistent with her earning capacity. She also testified and presented exhibits showing an increase in her expenses. Finally, she presented evidence demonstrating that the defendant had a sharp increase in his income since the dissolution judgment. In an October, 2011 memorandum of decision, the court concluded that the plaintiff had not established a substantial change in circumstances and supported its conclusion with several factual findings.

First, the court found that the plaintiff's earning capacity had remained the same since the dissolution judgment. In 2007, the court found that the plaintiff was an experienced corporate attorney who, at the time, was able to earn gross income of $78,500 over part of the year while recovering from a fractured pelvis and spending time attending to the divorce litigation. Accordingly, the dissolution court assigned her a $100,000 earning capacity on the basis of her ability to work ten hours per week at a rate of $200 per hour. See *Elia* v. *Elia*, 99 Conn. App. 829, 833, 916 A.2d 845

(2007) (in certain circumstances, court may base financial awards on earning capacity rather than actual income earned). At the May, 2011 hearing, the plaintiff claimed that in the years after the dissolution judgment, her actual earnings had fallen well short of her assigned earning capacity. As the court aptly noted, however, there had been no change in the plaintiff's skill, education, or ability to justify a change to her earning capacity. The court found that the plaintiff continued to work on a part-time basis as a freelance attorney. As earning capacity is "an amount which a person can realistically be expected to earn considering such things as his [or her] vocational skills, employability, age and health"; (internal quotation marks omitted) *Weinstein* v. *Weinstein*, 280 Conn. 772, 764, 911 A.3d 1077 (2007); the plaintiff had the burden of demonstrating a change to one or more of those factors. See *Angle* v. *Angle*, 100 Conn. App. 763, 773–74, 920 A.2d 1018 (2007) (affirming trial court's determination that defendant's postdivorce incarceration was not substantial change to his earning capacity); see also *Wanatowicz* v. *Wanatowicz*, 12 Conn. App. 616, 619, 533 A.2d 239 (1987) (reversing trial court's order because defendant's postdivorce alcoholic condition was not substantial change affecting his earning capacity). As the plaintiff's ability to earn remained largely the same since the dissolution judgment, the court properly found no substantial change in the plaintiff's earning capacity.

The court next found that the plaintiff had failed to establish a significant increase in her expenses. At the May, 2011 hearing, the plaintiff submitted evidence indicating that she incurred weekly transportation costs of $275.55, while the defendant incurred costs of only $71.55. The plaintiff also submitted a summary of expenses for the parties' youngest child, which totaled $63,401.31. The plaintiff, however, failed to submit any evidence to support her claim that these expenses represented a change in conditions since the dissolution judgment. Simply submitting the actual expenses to the court does not, by itself, support the claim that she has incurred costs greater than were originally contemplated in the dissolution judgment. See *Borkowski* v. *Borkowski*, supra, 228 Conn. 738 ("moving party must demonstrate circumstances have change since the last court order"). In fact, the 2007 dissolution judgment did order the plaintiff to bear a significant share of the maintenance costs of the minor children. The dissolution judgment stated that "[t]he costs of extracurricular activities and books . . . over $150 shall be shared equally between the parents with the [plaintiff] paying for anything less than $150." The dissolution judgment also ordered the parties to share equally the cost of their younger son's private high school tuition. The tuition represented $34,200, or more than half of the plaintiff's claimed 2011 expenses. As these costs were properly considered in the dissolution judgment, the court cor-

rectly concluded that they did not constitute a change in circumstances.

Finally, the court found that although the defendant's base salary and bonuses had increased since the dissolution judgment, the increase was not substantial. The court found that the defendant's salary had increased from $225,000 on the date of the dissolution judgment to $260,000. The court also found that the defendant's annual bonus had increased from $115,000, on the date of the dissolution judgment, to $175,000. Recently, in *Dan* v. *Dan*, 315 Conn. 1, 10,      A.3d      (2014), our Supreme Court concluded that "an increase in the supporting spouse's income, standing alone, ordinarily will not justify the granting of a motion to modify an alimony award." In support of this conclusion, the court noted that the purpose of alimony is to "ensure the continued enjoyment of the standard of living that he or she enjoyed during the marriage . . . ." Id., 11. Similarly, in the context of support obligations, our appellate courts have acknowledged that children "should receive the same proportion of parental income as he or she would have received if the parents lived together." (Internal quotation marks omitted.) *Jenkins* v. *Jenkins*, 243 Conn. 584, 594, 704 A.2d 231 (1998), citing Child Support and Arrearage Guidelines, Preamble, § (c), p. ii. As both alimony and child support orders are subject to the same modification requirements under § 46b-86 (a), we conclude that, under *Dan*, the plaintiff must show additional circumstances, beyond the defendant's increased income, to establish a substantial change in circumstances justifying a modification of child support. "[T]he purpose of a child support order is to provide for the care and well-being of minor children, and not to equalize the available income of divorced parents . . . ." *Battersby* v. *Battersby*, 218 Conn. 467, 473, 590 A.2d 427 (1991). As a result, we conclude that the court did not abuse its discretion when it determined that the plaintiff had not established a substantial change in circumstances in regard to her 2010 motion for modification of child support.[3]

In April 25, 2012, the court held a contested hearing on the plaintiff's 2008 motion for modification. At this hearing, the plaintiff again argued that she had been unable to earn income consistent with her earning capacity, that her living expenses had increased, and that the defendant's income had increased substantially. In November, 2012, the court denied her motion because she had failed to show a substantial change in circumstances. In its memorandum of decision, the court followed the same analysis used in its October, 2011 decision. In addition, the court found that, due to inconsistencies, the plaintiff's financial affidavit was not credible.[4] As it is the exclusive province of the trier of fact to resolve credibility determinations, the court properly determined that the plaintiff's financial affidavit should be given little weight, given the various incon-

sistencies it found. See *State* v. *Ortiz*, 95 Conn. App. 69, 81, 895 A.2d 834, cert. denied, 280 Conn. 903, 907 A.2d 94 (2006). We conclude that the court did not abuse its discretion when it determined that the plaintiff had not established a substantial change in circumstances in regard to her 2008 motion for modification of child support.

B

We now turn to the defendant's motion for modification. In July, 2010, the defendant filed a motion for modification of child support on ground that one of the parties' two sons had turned eighteen years old and had graduated from high school. In October, 2011, the court granted this motion on the basis that a child reaching the age of majority constituted a substantial change in circumstances. On appeal, the plaintiff argues that the court had no legal basis for its conclusion.[5] We disagree.

"[T]he purpose of a child support order is to provide for the care and well-being of minor children." (Internal quotation marks omitted.) *Rostad* v. *Hirsch*, 148 Conn. App. 441, 460, 85 A.3d 1212, 1225, cert. granted on other grounds, 311 Conn. 948, 949, 91 A.3d 463 (2014). "It is . . . axiomatic that support for a minor child extends to age eighteen only . . . ." *Lowe* v. *Lowe*, 47 Conn. App. 354, 357, 704 A.2d 236 (1997); see also General Statutes § 1-1d. Finally, it is well established that a child attaining the age of majority constitutes a substantial change in circumstances, justifying the modification of a support order. *Irizzary* v. *Irizzary*, 29 Conn. App. 368, 614 A.2d 868 (1992).

Here, the court found that the parties' older son, had reached the age of majority on November 19, 2009. This finding was properly supported by the dissolution judgment, in which the court found, by a preponderance of the evidence, that the parties' older son was born on November 19, 1991. Therefore, the court did not abuse its discretion in concluding that the defendant had established a substantial change in circumstances.[6]

II

Upon concluding that the court did not abuse its discretion in reaching the threshold determination that a substantial change in circumstances had occurred, we now turn to the court's decision to reduce the defendant's support order from $439 per week to $400 per week. Specifically on appeal, the plaintiff claims that the court improperly excluded various components of the defendant's income, improperly relied on the defendant's child support guidelines worksheet, and improperly deviated from the child support guidelines.

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the

question of modification. . . . These require the court to consider, without limitation, the needs and financial resources of each of the parties and their children, as well as such factors as health, age and station in life. . . . In making its determination of the applicability of these criteria, the trial court has broad discretion; the test is whether the court could reasonably conclude as it did. (Citations omitted; internal quotation marks omitted.) *Hardisty* v. *Hardisty*, 183 Conn. 253, 258–60, 439 A.2d 307 (1981). Under this standard of review, we now consider the plaintiff's various claims.

A

The plaintiff first claims that the court improperly excluded restricted stock and stock options when calculating the defendant's gross income. We disagree.

The following procedural history is relevant to this claim. The 2007 dissolution judgment allocated both the defendant's current and future restricted stock and stock options as part of the property distribution. The plaintiff received an irrevocable 50 percent interest in all stock options and restricted stock that had been awarded, granted, or credited to the defendant prior to the dissolution judgment. In addition, the judgment stated that the stock options and restricted stock would be "divided as part of the property settlement and shall not be alimony or child support." The dissolution judgment also awarded the plaintiff a 50 percent interest in any restricted stock or stock option awarded to the defendant in 2008, 2009, 2010, or 2011.

In its October 2011 memorandum of decision, the court found that, since the dissolution, the defendant had exercised stock options in the amount of $190,361. The court excluded this amount from the defendant's income because it already was subject to the court's property distribution orders.

Once property is distributed in accordance with a dissolution decree, the court ceases to have jurisdiction over that property. *Smith* v. *Smith*, 249 Conn. 265, 276, 752 A.2d 1023 (1999). Furthermore, courts may not consider the liquidation of awarded property as income. *Simms* v. *Simms*, 25 Conn. App. 231, 234, 593 A.2d 161, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991). When the conversion of property reflects gains or profit, this increase in value is also not considered income unless it is shown to reflect a steady stream of income. Id.; see *Gay* v. *Gay*, 266 Conn. 641, 647, 835 A.2d 1 (2003) (sale of capital asset in particular year not considered income).

The plaintiff argues that restricted stock and stock options are a form of deferred compensation that must be included as income under the child support guidelines. This argument, however, fails because the plaintiff did not present evidence showing which, if any, of the restricted stock or stock options were awarded to

the defendant postdissolution. As we have held, stock options awarded at the time of dissolution do not constitute income when they are later exercised; see *Denley* v. *Denley*, 38 Conn. App. 349, 353–54, 661 A.2d 628 (1995); therefore, it was the plaintiff's burden to distinguish between stock awarded prejudgment and stock awarded postjudgment. There was no evidence that the stock options exercised by the defendant were awarded after the dissolution and, therefore, not a part of the property distribution. With regard to the restricted stock, there was evidence before the court indicating that it was part of the property distribution. At the May, 2011 hearing, the defendant testified that his employer awards him restricted stock each year, but that the stock does not vest and transfer to him until four years later. As that hearing was held fewer than four years after the 2007 dissolution judgment, it was reasonable for the court to conclude that all restricted stock had been part of the original property distribution. Because our review is limited to whether the court's conclusions are reasonable; *Hardisty* v. *Hardisty*, supra, 183 Conn. 260; we conclude that the court did not abuse its discretion in excluding stock options and restricted stock from the defendant's income calculation.

B

The plaintiff next claims that the court erred when it failed to include dividend and interest income in determining the defendant's gross income. We decline to address the merits of this claim because the plaintiff has inadequately briefed it.

"We are not obligated to consider issues that are not adequately briefed." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008). The plaintiff's brief provides minimal citation to authority and no analysis as applied to the facts of this case. See *O'Connell, Flaherty & Attmore, LLC* v. *Doody*, 124 Conn. App. 1, 8, 3 A.3d 969 (2010). Furthermore, the plaintiff's brief makes no reference as to the amount of dividend or interest income, or whether there had been a material change in that income source since 2007. Accordingly, we decline to address this claim on appeal.

C

The plaintiff next claims that the court improperly deviated from the child support guidelines when it imputed to her a $100,000 earning capacity. We disagree.

In the 2007 dissolution judgment, the court found that the plaintiff had an earning capacity of $100,000. The court explained its findings by stating that "[d]uring the course of the marriage, the [plaintiff] worked full-time as a corporate attorney, sometimes earning in excess of the [defendant's] salary. . . . She is highly

skilled and capable. She is presently working as a free-lance corporate attorney . . . at $200 per hour . . . . From mid-July, 2007 to Dec[ember] 12, 2007, she earned $78,500 [in] gross [income], while undergoing recovery from a fractured pelvis and spending many days and hours attending to this ongoing litigation. . . . If she billed 500 hours per year over fifty weeks or ten hours per week, she would gross $100,000."

In denying the plaintiff's motion for modification, the court found that the plaintiff had failed to show that her earning capacity had changed substantially since the dissolution judgment. The court stated in its memorandum of decision that she reported $177,400 in gross income from 2008, $95,550 in gross income from 2009, and $115,412 in gross income from 2010. The court also stated that these "gross income levels have been achieved since the date of judgment by working part-time." Because the plaintiff had not established a substantial change in her earning capacity, the court imputed this income in calculating the modified child support order.

Upon concluding that the plaintiff remained capable of earning $100,000 by working full-time, the court correctly applied the earning capacity from the original dissolution judgment. See *Borkowski* v. *Borkowski*, supra, 228 Conn. 738. The court found that the plaintiff continued to be a highly skilled corporate attorney, capable of working on a full-time basis. As a result, the court did not abuse its discretion when it imputed an earning capacity to the plaintiff.

D

The plaintiff also claims that the court improperly excluded from its financial calculations certain employee perquisites and recurring gifts received by the defendant. We disagree.

With respect to the factual predicates for modification of a child support order, our standard of review is clear. "This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken. . . . This court, of course, may not retry a case. . . . The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." (Internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 516–17, 914 A.2d 1058 (2007).

At the May, 2011 hearing, the plaintiff sought to prove that the defendant had received $59,484 in perquisites

from his employer and $27,972 in recurring gifts in the form of free rent from his sister. The court found that in each instance, the plaintiff had not met her burden of proof. In its October 20, 2011 memorandum of decision, the court explained its reasoning for excluding both sources from the calculation of the defendant's income. First, the court explained that, under § 46b-215a-1 (11) (A) (vi) of the Regulations of Connecticut State Agencies, employment perquisites are to be considered income for the purposes of child support to the extent that they represent "basic maintenance or special need such as food, shelter or transportation provided on a recurrent basis in lieu of or in addition to salary or wages." The court then noted that although the plaintiff had submitted an exhibit showing that the defendant had received $59,484 in employer contributions, there was no evidence showing how much of those contributions constituted food, shelter, transportation, or other basic needs. Second, the court found that the defendant was currently residing, rent free, at his sister's home in Hartford during the winter months, while residing at his cottage in Stonington, which was awarded to him in the dissolution judgment, during the summer months.

At the May, 2011 hearing, the plaintiff presented evidence that in 2007, the defendant had rent and utility expenses of $27,972 from an apartment that he had rented at that time. On that basis, the plaintiff argued that a rent free apartment constituted a regularly recurring gift, valued at $27,972 per year. The court disagreed and made several findings in support of its conclusion. The court found that the defendant's $27,972 in expenses included not only rental fees for an apartment, but also maintenance expenses related to the upkeep of the Stonington cottage, which he had been awarded in the dissolution judgment. The court also found that the $27,972 in expenses were incurred over the entire year, while the defendant only lived with his sister during the winter months. Finally, the court found that the plaintiff had presented no evidence indicating the rental value of an apartment in the defendant's sister's neighborhood in Hartford. Upon our review, we find nothing in the record to undermine our confidence in the court's factual findings, and defer to its sound judgment in reaching its conclusions.

E

The plaintiff next claims that the court, in modifying the defendant's child support obligation, improperly relied upon the defendant's child support guidelines worksheet (worksheet). Specifically, the plaintiff asserts that the court relied on an "unsworn" worksheet and that the financial information on the defendant's worksheet was unsupported by the evidence. We find both of these arguments unpersuasive.

Practice Book § 25-30 (e) requires parties with minor

children to "file a completed child support and arrearage guidelines worksheet at the time of any hearing concerning child support . . . ." In addition to this requirement, the parties are also required to submit to the court *certain sworn statements* concerning income, expenses, assets and liabilities. See Practice Book § 25-30 (e); *Gentile* v. *Carneiro*, 107 Conn. App. 630, 654, 946 A.2d 871 (2008). The plaintiff incorrectly argues on appeal that our rules of practice require all worksheets to be sworn. We do not construe § 25-30 to be so restrictive. The defendant correctly filed a completed worksheet, as well as a sworn financial affidavit and other documentation, in compliance with our rules of practice.

The plaintiff's next claim is that the defendant's worksheet was not supported by the evidence. A court may not rely on a worksheet unless it is based on some underlying evidence. See *Aley* v. *Aley*, 101 Conn. App. 220, 229, 922 A.2d 184 (2007). In *Aley*, this court reversed a child support order based exclusively on a worksheet that had no evidentiary basis. Id., 229–30. In that case, the defendant did not attend the dissolution proceedings and had failed to submit a financial affidavit. Id., 228–29. Further, the plaintiff provided no testimony, nor did she submit any documentary evidence regarding the defendant's income. Id. As a result, this court concluded that the worksheet was the only basis for the trial court's determination of the defendant's income. Id., 229. In contrast to *Aley*, the defendant in the present case provided testimony regarding his income, a financial affidavit, and other documentary evidence in support of his child support worksheet. Because the worksheet was based on underlying evidence, it was reasonable for the court to rely on it when determining the financial position of the parties.

Finally, the plaintiff makes two additional claims regarding the use of the defendant's worksheet. First, the plaintiff argues that the court should not have excluded certain sources of the defendant's income on the one hand, while also allowing him to deduct federal taxes paid on those sources in determining his net income. This argument, however, is inconsistent with the plain language of the worksheet, which explicitly instructed the defendant to deduct "Federal income tax (based on all allowable exemptions, deductions and credits)." As there is no distinction made between federal taxes paid on gross cash income and other forms of income, we decline to follow the plaintiff's logic. Second, the plaintiff argues that the court incorrectly deducted $73 per week for health insurance even though she testified that her actual insurance costs were $153 per week. Even if we agreed with the plaintiff, the $153 deduction would have no impact on the presumptive child support amount as the combined net income of the parties would still be greater than $4000 per week. See part II F of this opinion. Although the record

is void of any support for court's finding that the plaintiff's health insurance cost was $73, we conclude that this error is harmless because it is evident that the court's analysis would reach the same result.[7] See *Taylor* v. *Taylor*, 17 Conn. App. 291, 293, 551 A.2d 1285 (1989).

F

Having concluded that the court did not abuse its discretion in determining the financial standing of the parties, we now consider whether the court properly modified the child support order from $439 per week to $400 per week. The plaintiff argues that this modification amounted to an improper deviation from the child support guidelines (guidelines). The defendant argues that the modification was well within the guidelines and, therefore, did not constitute an abuse of discretion. We agree with the defendant.

The following additional facts are relevant to this claim. In its October, 2011 memorandum of decision, the court found that the parties had a combined net weekly income of $6440, with the defendant earning $5175 per week, and the plaintiff having imputed earnings of $1260 per week. The court also found that one of the parties' children had reached the age of majority, and that the defendant was obligated to provide support for only one child under the age of majority. After considering all of the relevant factors set forth in General Statutes §§ 46b-84 and 46b-86, and the guidelines, the court then ordered a reduction of child support from $439 per week to $400 per week.

In determining the appropriate amount of child support, courts are provided with state guidelines and an accompanying schedule. See Regs., Conn. State Agencies § 46b-215a-2b (f). "[T]he schedule sets forth a presumptive percentage and resultant amount corresponding to specific levels of combined net weekly income; the schedule begins at $50 and continues in progressively higher $10 increments, terminating at $4000. . . . [Our Supreme Court] has recognized that the guidelines nonetheless apply to combined net weekly income in excess of that maximum amount. See *Maturo* v. *Maturo*, [296 Conn. 80, 94–95, 995 A.2d 1 (2010)] ([the guidelines] provide that all child support awards must be made in accordance with the principles established therein to ensure that such awards promote equity, uniformity and consistency for children *at all income levels* . . .); see also *Misthopoulos* v. *Misthopoulos*, [297 Conn. 358, 367, 999 A.2d 721 (2010)] (relying on *Maturo* for this principle); *Tuckman* v. *Tuckman*, [308 Conn. 194, 205–206, 61 A.3d 449 (2013)] (same). Indeed, the regulations direct that, [w]hen the parents' combined net weekly income exceeds $4,000, child support awards shall be determined on a case-by-case basis, and the current support prescribed at the $4,000 net weekly income level shall be the minimum presump-

tive amount. Regs., Conn. State Agencies § 46b-215a-2b (a) (2).

"While the regulations clearly demarcate the presumptive *minimum* amount of the award in high income cases, they do not address the *maximum* permissible amount that may be assigned under a proper exercise of the court's discretion. In order to provide some guidance to the trial courts on this matter without unduly encroaching on the purposeful decision of the legislative branch not to prescribe an amount or method for calculating that maximum amount, this court has remained mindful that the guidelines . . . indicate that such awards should follow the principle expressly acknowledged in the preamble [to the guidelines] and reflected in the schedule that the child support obligation as a percentage of the combined net weekly income should decline as the income level rises. . . . *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 368. We therefore have determined that child support payments . . . should *presumptively* not exceed the [maximum] percent [set forth in the schedule] when the combined net weekly income of the family exceeds $4000, and, in most cases, should reflect less than that amount. See *Maturo* v. *Maturo*, supra, 296 Conn. 96." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Dowling* v. *Szymczak*, 309 Conn. 390, 400–401, 72 A.3d 1 (2013).

In the present case, the court properly applied the guidelines consistent with our regulations and case law. The parties earned a combined weekly income of over $4000. This meant that, pursuant to the guidelines, the presumptive floor of child support for one child was $473 per week. The presumptive ceiling, consistent with the holding of *Dowling*, was to be no more than 11.83 percent of the parties' combined net weekly income. As the court found that the parties had a combined income of $6440 per week, the presumptive ceiling was determined to be $761 per week. The court then determined that the defendant's income represented 80 percent of the combined income, and, therefore, his obligation should be limited to 80 percent of the total amount of child support. Thus, the court reduced the defendant's child support range by 20 percent to a "floor of $378 and a ceiling of $608." We must conclude then, that the court's decision to modify the support order to $400 per week was well within the guidelines and, therefore, was not an abuse of discretion.

### III

The plaintiff next claims that the court improperly failed to find the defendant in contempt for wilfully violating its order. We disagree.

The following additional facts are relevant to our resolution of this claim. In 2011, this court remanded the plaintiff's 2008 motion for modification of child

support for an evidentiary hearing. See *McKeon* v. *Lennon*, supra, 131 Conn. App. 599–600. The trial court scheduled the hearing for April 25, 2012. On April 13, 2012, the plaintiff served notice on the defendant, requiring him to attend a deposition scheduled for April 20, 2012. On April 19, 2012, at 2 p.m., the court held a discovery hearing where, at its conclusion, the defendant was ordered to bring his tax returns, bank records, and financial affidavits to the deposition. At the time, the defendant was traveling for business and did not return until late that night. On April 20, 2012, the defendant attended the deposition, but did not produce the ordered documents. On April 25, 2012, the plaintiff filed a motion for contempt against the defendant alleging that his failure to produce court-ordered financial documents prejudiced her ability to prepare for the hearing.

At the April 25, 2012 hearing, the court heard argument on the plaintiff's motion for contempt. The defendant admitted that he had not produced the required documents at the deposition, but stated that he was unable to produce the documents because of the short period of time between the order and the deposition. After hearing from both sides, the court asked the plaintiff if she was "claiming that [she was] somewhat prejudiced because [she did not have] enough time to prepare with all that information that [she] requested [and if she was] asking for more time?" The plaintiff did not request a continuance and stated that she would like to proceed with the hearing on the 2008 motion for modification.

On November 20, 2012, the court denied the plaintiff's motion for contempt. In its memorandum of decision, the court found that although the defendant had not complied with the court's order, his noncompliance was not wilful.

We begin our analysis by setting forth the appropriate legal standard. "A finding of contempt is a question of fact." (Internal quotation marks omitted.) *Gil* v. *Gil*, 94 Conn. App. 306, 311, 892 A.2d 318 (2006). "We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous." *Dionne* v. *Dionne*, 115 Conn. App. 488, 494, 972 A.2d 791 (2009). "For the court to properly find a party in contempt, that party's noncompliance with the court's order must be willful." *Brody* v. *Brody*, 145 Conn. App. 654, 665, 77 A.3d 156 (2013). A finding of noncompliance alone will not support a judgment of contempt. *Lawrence* v. *Lawrence*, 92 Conn. App. 212, 214, 883 A.2d 1260 (2005).

In the present case, the court found that although the defendant had been noncompliant with the discovery order, he had not been wilfully noncompliant. In support of this conclusion, the court found that the discovery order had been issued on the afternoon before the scheduled deposition. On the day prior to the deposi-

tion, the defendant had been traveling for business and did not arrive at home until late that night. The court found that on the day of the deposition, the defendant went to work and then went directly to the deposition. As a result, the court reasonably concluded that "[i]t was not possible for the defendant to produce the ordered documents in such short notice." As the court's findings were clearly supported by the evidence, we conclude that the court properly denied the plaintiff's motion for contempt.

IV

The plaintiff's final claim is that the court erred when it denied her motion for appellate attorney's fees. The plaintiff argues that because of errors in calculating the defendant's income, the court based its denial on inaccurate financial information. We disagree.

In support of her claim, the plaintiff reasserts the same arguments that we addressed in part II of this opinion. The plaintiff does not allege any other independent basis for reversal; she only argues that if her other claims are remanded for further consideration, then her motion for attorney's fees should also be remanded. This argument might have merit if we agreed with the plaintiff on her earlier claims. Earlier in this opinion, however, we concluded that the court properly calculated the financial positions of the parties. Consequently, we reject the plaintiff's claim that the court improperly denied her motion for attorney's fees.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] That appeal, AC 30068, was consolidated with four other appeals filed by the plaintiff, AC 30067, AC 30069, AC 30070, and AC 30636.

[2] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on or after May 9, 1991. In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. After the date of judgment, modification of any child support order issued before, on or after July 1, 1990, may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. . . . If a court, after hearing, finds that a substantial change in circumstances of either party has occurred, the court shall determine what modification of alimony, if any, is appropriate, considering the criteria set forth in section 46b-82."

[3] The plaintiff cites several cases in which our appellate courts have upheld findings of a substantial change in circumstances on the basis of an increase in the defendant's income. See, e.g., *Schwarz* v. *Schwarz*, 124 Conn. App. 472, 478–79, 5 A.3d 548 (upholding trial court's finding that 20 percent increase in gross income was a substantial change), cert denied, 299 Conn. 909, 10 A.3d 525 (2010); *Serby* v. *Serby*, 4 Conn. App. 398, 401, 494 A.2d 617 (1985) (upholding 20 percent increase in gross income was substantial change). We disagree, however, with the plaintiff's conclusion that these cases require us to reverse the court's denial of her motion. The cited cases considered the question of whether to uphold the court's conclusion of a substantial change in circumstances, while in the present case we are asked to review the court's determination that the plaintiff had failed to establish a substantial change. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 800, 930 A.2d 811 (2007).

[4] The court found several inconsistencies between the plaintiff's financial affidavit and her supporting documents. First, the plaintiff estimated her weekly income using only income she had been paid and omitted $10,000 in income that was earned, but not yet received. Next, she claimed weekly expenses of $9684. In support of this claim, she submitted exhibits claiming that she had paid a total of $219,515 in credit card bills from May, 2011 through April, 2012. After reviewing the documents, however, the court concluded that the credit card bills were from November, 2010 through May, 2012. The court also found that the plaintiff's affidavit overestimated her monthly credit card debt payment by $7441.63. Finally, the court noted that the 2007 dissolution judgment found that the parties' marital home had $85,000 worth of furnishings. The plaintiff's most recent financial affidavit claimed only $3000 worth of furnishings.

[5] We note that the plaintiff previously had argued before the trial court that "Connecticut law does not permit the court to order support for a child over the age of majority except through education support orders or medical insurance." At that time, she was challenging an order from the dissolution judgment that required her to pay maintenance costs for her adult daughter's car. On appeal, she now takes the opposite position that the court has no authority to reduce child support on the basis that their older son had reached the age of majority.

[6] The plaintiff additionally argues that the court abused its discretion when it found a substantial change in circumstances without requiring the defendant to rebut the presumption that reductions in child support of less than 15 percent are not substantial. She bases this argument on § 46b-86 (a), which provides in relevant part that any deviation of less than 15 percent from the child support guidelines is not substantial. The plaintiff's reliance on § 46b-86 (a), however, is misplaced. The reference to a 15 percent presumption does not apply to a substantial change in circumstances but, rather, applies to situations where the final order deviated substantially from the child support guidelines. See *Schwarz* v. *Schwarz*, 124 Conn. App. 472, 477, 5 A.3d 548, cert. denied, 299 Conn. 909, 10 A.3d 525 (2010).

[7] Under the plaintiff's argument, her net income would be reduced by $153 in health insurance costs, rather than by $73. This reduction would leave her with a net income of $1180 per week, while the defendant's income would remain at $5175 per week. The parties would then have a total weekly income of $6355, with the defendant earning 81.43 percent and the plaintiff earning 18.57 percent. Applying these percentages to the child support guidelines, we calculate the presumptive range of support to be between $385 and $612 per week. Following the plaintiff's argument results in a range that is substantially the same as the range calculated by the court in its October, 2011 memorandum of decision ($378 to $608). Thus, even if we adopted the plaintiff's argument, we would still conclude that the court's order of $400 per week in child support was squarely within the presumptive range of the child support guidelines.